Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 66**

**Nos. 14SC31 & 14SC858, <u>Teague v. People</u> & <u>People v. Rogers</u> — Criminal Law — Sentencing and Punishment — Costs Taxable Against Defendant.**

In this combined opinion, the supreme court addresses whether sexual offenders must shoulder the cost of their victims' forensic medical examinations as criminal restitution.  By statute, such restitution may include "extraordinary direct public . . . investigative costs."  The court therefore considers whether the cost of a sexual assault nurse examiner (SANE) examination is "extraordinary" for purposes of the statute.  As both a medical and investigative response to a sexual offense, these examinations necessarily perform dual roles.  The supreme court concludes that the hybrid nature of these exams renders them, and their resulting costs, extraordinary.  It further concludes the state may therefore recover those costs as restitution.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 66

### Supreme Court Case No. 14SC31

*Certiorari to the Colorado Court of Appeals*

Court of Appeals Case No. 10CA2358

### Petitioner:

Adam Michael Teague,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed

*en banc*

June 5, 2017

**\* \* \* \* \***

### Supreme Court Case No. 14SC858

*Certiorari to the Colorado Court of Appeals*

Court of Appeals Case No. 11CA1934

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Bobby Nicky Rogers.

### Judgment Reversed

*en banc*

June 5, 2017

**Attorneys for Petitioner Adam Michael Teague:**
Douglas K. Wilson, Public Defender
Andrew C. Heher, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Petitioner/Respondent The People of the State of Colorado:**
Cynthia H. Coffman, Attorney General
Christine Brady, Senior Assistant Attorney General
  *Denver, Colorado*


**Attorneys for Respondent Bobby Nicky Rogers:**
Douglas K. Wilson, Public Defender
Meghan M. Morris, Deputy Public Defender
  *Denver, Colorado*


**Attorneys for Amicus Curiae Office of the District Attorney, Eighteenth Judicial District:**
George H. Brauchler, District Attorney, Eighteenth Judicial District
Richard H. Orman, Chief Deputy District Attorney
  *Centennial, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE GABRIEL** does not participate.

2

¶1     We granted certiorari in these cases to determine whether sexual offenders must shoulder the cost of their victims' forensic medical examinations as criminal restitution. While the General Assembly has authorized recovery of "extraordinary direct public . . . investigative costs," divisions of our court of appeals have disagreed as to whether the cost of a victim's SANE (Sexual Assault Nurse Examiner) examination is in fact "extraordinary." We now conclude it is.

¶2     As both a medical and investigative response to a sexual offense, a SANE exam necessarily performs dual roles. It functions not only as a valuable tool for collecting sexual-assault evidence but also as a patient-centered medical procedure that is sensitive to victims' treatment needs, conducted by medical personnel, and limited to the scope of victims' informed consent. We conclude the hybrid nature of these exams renders them, and their resulting costs, extraordinary, and the state may recover those costs as restitution. We thus affirm the judgment of the court of appeals in People v. Teague, No. 10CA2358 (Colo. App. Nov. 27, 2013) (not published pursuant to C.A.R. 35(f)), and reverse the judgment of the court of appeals in People v. Rogers, 2014 COA 110, __ P.3d __. Accordingly, we also reinstate the district court's restitution award in Rogers.

## I.  Facts and Procedural History

¶3     This opinion consolidates two unrelated sexual assault cases. In El Paso County District Court Case No. 09CR1165, the People alleged that Adam Michael Teague sexually assaulted the victim while she was asleep. During a police interview, Teague denied any sexual contact with the victim, yet the morning following that denial, a

SANE exam of the victim revealed possible sexual activity. The People then charged Teague with sexual assault, and he later pled guilty to a misdemeanor offense resulting in probation.

¶4 In Arapahoe County District Court Case No. 09CR2049, the People alleged that Bobby Nicky Rogers offered the victim a ride in his car, drove her behind a building, and forced her, at knifepoint, to perform oral sex on him. The victim reported the assault, received a SANE exam, and later identified Rogers as her assailant. He later pled guilty to attempted sexual assault in return for a stipulated four-year term of sex offender intensive supervised probation.

¶5 The People in both cases sought to recover the costs of the SANE exams as restitution under sections 18-1.3-601 to -603, C.R.S. (2016). Teague and Rogers objected, and the trial court in each case awarded the People the requested cost of the exam, totaling $702.27 to be paid to the Colorado Springs Police Department in Teague's case and $500.00 to be paid to the Aurora Police Department in Rogers's.

¶6 Teague and Rogers appealed, each of them arguing that the expense of a SANE exam is not an "extraordinary direct public . . . investigative cost[]" as described in section 18-1.3-602(3)(b)[1] and recoverable under section 18-1.3-603. In an unpublished opinion, the division hearing Teague's appeal affirmed the restitution award. Teague, slip op. at 8. Beginning from a dictionary definition of "extraordinary," the division

---

[1] The legislature has since amended section 18-1.3-602 to define restitution as including some medical and health benefits, § 18-1.3-602(3)(d), but the language at issue here has remained intact. And because the offenses in these cases predated that amendment, we need not construe the new provision.

4

concluded that the cost of a SANE exam satisfies the statute. Id. at 4–6. It reasoned that (1) the exams require medical professionals, not law enforcement personnel, to collect evidence, and (2) other statutes had defined extraordinary costs to include otherwise common expenses. Id. The division in Rogers's case reached the opposite result. Rogers, ¶ 18. Operating from the same definition used in Teague, the division in Rogers concluded SANE exams do not create extraordinary costs because law enforcement typically uses them to gather evidence. Id. at ¶¶ 16–18.

¶7 Teague and the People each sought our review of the decisions against them, and we granted certiorari in both cases.[2]

## II. Standard of Review and Rules of Statutory Interpretation

¶8 The issue presented requires us to interpret the term "extraordinary," and this court reviews such questions of statutory construction de novo, People v. Padilla-Lopez, 2012 CO 49, ¶ 7, 279 P.3d 651, 653. In construing a statute, we aim to give effect to the General Assembly's purpose in enacting it. Dubois v. People, 211 P.3d 41, 43 (Colo. 2009). To do so, we accord statutory words and phrases their plain and ordinary meanings. Padilla-Lopez, ¶ 7, 279 P.3d at 653. When the language of the statute is clear and we can discern the legislative intent with certainty, we need not resort to other tools of statutory interpretation. Dubois, 211 P.3d at 43.

---

[2] We granted certiorari to review essentially the same issue from both cases. As reframed in Teague, that issue is as follows:

> Whether the cost of a sexual assault nurse examiner ("SANE") exam is subject to restitution as an "extraordinary direct public . . . investigative cost" under section 18-1.3-602(3)(b), C.R.S. (2014).

5

## III. Analysis

¶9     The parties in these cases have raised various arguments for and against restitution, but at bottom they ask a straightforward question: is the expense of a SANE exam an extraordinary direct public investigative cost? We answer in three parts. First, we supply some background on the SANE exam itself, outlining its functions and components. Second, we turn to the statute and apply its language to SANE exams as described. Third, we determine that the expenses associated with those exams are in fact an extraordinary direct public investigative cost and conclude the state is entitled to recover them.

### A. SANE Examinations Necessarily Serve a Dual Purpose

¶10     The SANE examination process consists of multiple steps, some of them evidentiary and some of them medical in nature. Whatever the function of a given step, however, medical personnel oversee that process in its entirety, from providing care to (potentially) testifying in a resulting case.

¶11     At the outset, initial responders, who may not be examiners themselves, must evaluate and respond to any serious or life-threatening injuries while also attempting to maximize evidence preservation. U.S. Dep't of Justice, Office on Violence Against Women, NCJ 228119, A National Protocol for Sexual Assault Forensic Examinations Adults/Adolescents 8–9 (2d ed. 2013), https://perma.cc/P3WF-ZTW6. From there, examiners turn to evidentiary concerns within the scope of the victim's informed consent, documenting the victim's forensic medical history, taking photographs, and collecting and documenting physical evidence. Id. at 9–10. The examiner may also

explore the victim's concerns about sexually transmitted infections and pregnancy, encouraging testing and counseling as needed. Id. at 10. Finally, before discharge, health care personnel may need to coordinate both follow-up care and activities requiring law enforcement involvement. Id. at 11.

¶12 As this overview suggests, a SANE examination serves not only as an evidence-gathering tool for law enforcement but also as a source of comprehensive care for victims. The U.S. Department of Justice report detailing the protocol for conducting SANE exams has summarized those dual functions, noting first that "[a] timely, high-quality medical forensic examination can potentially validate and address sexual assault patients' concerns, minimize the trauma they may experience, and promote their healing." Id. at 4 (footnote omitted). The report continues, "At the same time, [a SANE exam] can increase the likelihood that evidence collected will aid in criminal case investigation, resulting in perpetrators being held accountable and further sexual violence prevented." Id.

¶13 Our court of appeals has made a similar observation regarding the exams' dual roles. In People v. Montanez, the court noted that "A SANE 'is responsible for completing the entire sexual assault evidentiary exam including crisis intervention, STD prevention, pregnancy risk evaluation and interception, collection of forensic evidence, and referrals for additional support and care.'" 2012 COA 101, ¶ 17, 300 P.3d 940, 943 (quoting U.S. Dep't of Justice, Office of Justice Programs, Office for Victims of Crime, NCJ 170609, Sexual Assault Nurse Examiner Development and Operation Guide 11,

https://perma.cc/9B5S-P4LM).[3]  The dual nature of the exams has also supported the court of appeals' conclusion that a victim's statement to a SANE can constitute a statement made for the purposes of medical diagnosis or treatment under C.R.E. 803(4). See People v. Tyme, 2013 COA 59, ¶¶ 9, 16–17, 315 P.3d 1270, 1272–73 (noting statements made to a SANE for treatment purposes may be admissible but those made for purely investigative purposes may not be).  We, too, conclude that SANE exams at once serve both investigative and medical purposes.

## B.  SANE Examination Expenses are Extraordinary Direct Public Investigative Costs

¶14    Colorado law requires courts entering an order of conviction to consider restitution.  § 18-1.3-603.  In setting that requirement, the legislature has determined that  offenders bear "a moral and legal obligation to make full restitution to those harmed by their misconduct" and has found that restitution encourages offenders' rehabilitation and deters future criminality.  § 18-1.3-601(1)(b)–(d).  As to what constitutes a cost eligible for restitution, we have held that, typically, the legislature must specify the law enforcement costs it intends to be recoverable.  Dubois, 211 P.3d at 46.  It has done so here.  The General Assembly has outlined various costs qualifying as restitution, explaining that the term may also encompass "extraordinary direct public and all private investigative costs."  § 18-1.3-602(3)(b).

---

[3] We are aware that the division in Montanez, ¶ 22, 300 P.3d at 944, pointed to section 18-3-407.5, C.R.S. (2016), as obligating law enforcement to pay for a SANE exam at a victim's request, yet that statute merely identifies the party required to pay in the first instance.  It does not speak to whether law enforcement may then seek to recover its costs.  See § 18-3-407.5(1), (3)(b).  To the extent Montanez suggests law enforcement alone must bear those costs, we overrule it.

¶15 The statute does not further define the term extraordinary, however, so we must now interpret and apply that term. Because we accord words their ordinary meanings before turning to additional tools of statutory interpretation, Dubois, 211 P.3d at 43, we look first to the definition of the word extraordinary. In common usage, that term means "more than ordinary," "not of the ordinary order or pattern," and "going beyond what is usual, regular, common, or customary." Extraordinary, Webster's Third New International Dictionary (2002).

¶16 Applying that definition, we conclude SANE examinations, and by extension, their costs, are extraordinary. The hybrid nature of those examinations compels our conclusion. Although medical personnel may perform blood draws, autopsies, and the like, we consider it "beyond what is usual" for them to play such a large role in the investigative process while remaining sensitive to the treatment needs and dignity of patients who have just experienced traumatizing events. Sexual offenses require them to perform both functions at once—preserving evidence while stabilizing, documenting as well as counseling, collecting evidence without breaching a victim's informed consent. And even after the exam ends, the examiner must remain ready to testify. This dual nature, in our view, separates SANE exams from more workaday investigative processes and renders them not simply extraordinary, but unique. To be clear, we reach this conclusion based on the unique nature of the exam at issue here, not the nature of the crime or the frequency with which police are called upon to investigate that crime.

9

¶17 The cost of SANE exams is therefore recoverable as restitution under section 18-1.3-602(3)(b).

## IV. Conclusion

¶18 As both a medical and investigative response to a sexual offense, a SANE exam necessarily performs dual roles. It functions not only as a valuable tool for collecting sexual-assault evidence but also as a patient-centered medical procedure that is sensitive to victims' treatment needs, conducted by medical personnel, and limited to the scope of victims' informed consent. We conclude the hybrid nature of these exams renders them, and their resulting costs, extraordinary, and the state may recover those costs as restitution. We thus affirm the judgment of the court of appeals in <u>Teague</u> and reverse the judgment of the court of appeals in <u>Rogers</u>. Accordingly, we also reinstate the district court's restitution award in <u>Rogers</u>.