Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 19, 2017

**2017 CO 74**

**No. 15SA331, People v. Lente—State Constitutional Law—Personal Use of Marijuana.**

The supreme court holds that the prohibition on processing or manufacturing marijuana or marijuana concentrate under section 18-18-406(2)(a)(I), C.R.S. (2016), is not unconstitutional as applied to Austin Lente, who used butane to extract hash oil from marijuana. Although "processing . . . marijuana plants" is a protected personal activity under Colorado's Amendment 64, "manufacturing . . . marijuana" is protected only as a facility-operation activity that requires a license. At the time Amendment 64 was approved, Colorado law established that extracting hash oil was manufacturing, not processing, and the supreme court assumes Amendment 64 adopted that settled meaning. Because Lente was unlicensed, he could not manufacture hash oil under cover of the constitution. Accordingly, the supreme court reverses the district court's order that ruled the statute is unconstitutional as applied to Lente.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 74

### Supreme Court Case No. 15SA331

*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 15CR961
Honorable David S. Prince, Judge

### Plaintiff-Appellant:

The People of the State of Colorado,

v.

### Defendant-Appellee:

Austin Joseph Lente.

### Order Reversed

*en banc*
June 19, 2017

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
Doyle Baker, Senior Deputy District Attorney
Jimmy Litle, Deputy District Attorney
 *Colorado Springs, Colorado*

Cynthia H. Coffman, Attorney General
John T. Lee, Assistant Attorney General
 *Denver, Colorado*

**Attorneys for Defendant-Appellee:**
Douglas K. Wilson, Public Defender
Nathan Ojanen, Deputy Public Defender
 *Colorado Springs, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**CHIEF JUSTICE RICE** dissents, and **JUSTICE GABRIEL** joins in the dissent.

¶1 When Austin Joseph Lente tried to extract hash oil from marijuana using butane, the butane exploded, engulfing his laundry room in flames. Worse yet, he was charged with processing or manufacturing marijuana or marijuana concentrate in violation of section 18-18-406(2)(a)(I), C.R.S. (2016).

¶2 The district court dismissed the charge, reasoning Amendment 64 decriminalized processing marijuana and therefore rendered section 18-18-406(2)(a)(I) unconstitutional as applied to Lente. The People appealed directly to this court.

¶3 We disagree with the district court. When Amendment 64 was approved, "processing" marijuana had a settled meaning that excluded hash-oil extraction, and we assume Amendment 64 adopted that meaning. We hold that, under Amendment 64, extracting hash oil from marijuana is manufacturing marijuana—not processing marijuana plants—and therefore does not fall within Amendment 64's protected personal uses of marijuana. Accordingly, the district court erred in dismissing the charge. We reverse and remand for further proceedings.

## I. Facts and Procedural History

¶4 As relevant here, in 2012, Colorado citizens adopted Amendment 64 to the Colorado Constitution, legalizing under state law possession of one ounce or less of marijuana and some uses of marijuana for people twenty-one or older. Amendment 64 also decriminalizes under state law the "processing . . . [of] no more than six marijuana plants." Colo. Const. art. XVIII, § 16(3)(b).[1]

---

[1] The question of whether Colorado's marijuana laws are preempted by federal law is not raised in this case.

2

¶5 In 2015, the Colorado Springs Police and Fire Departments responded to a report of a fire at Lente's house. Lente admitted he had caused the fire in the laundry room while trying to extract hash oil from marijuana. He had frozen a jar containing marijuana, removed the jar from the freezer, and injected butane into the jar through a hole in the lid. Before he could return the jar to the freezer, the bottom of the jar broke, spilling butane onto the freezer. The butane exploded, setting the room ablaze.

¶6 Lente was charged with processing or manufacturing marijuana or marijuana concentrate under section 18-18-406(2)(a)(I),[2] arson, criminal mischief, and several other counts. He moved to dismiss the processing/manufacturing charge, reasoning that section 18-18-406(2)(a)(I) was unconstitutional because Amendment 64 had decriminalized processing marijuana. After a hearing, the district court granted the motion and dismissed the charge.

¶7 The People appealed directly to this court under section 16-12-102(1), C.R.S. (2016), and C.A.R. 4(b)(3).

## II. Analysis

¶8 Lente does not dispute that his alleged conduct—using butane to extract hash oil from marijuana—violated section 18-18-406(2)(a)(I). But he argues that statute is

---

[2] Section 18-18-406(2)(a)(I) provides,

> It is unlawful for a person to knowingly process or manufacture any marijuana or marijuana concentrate or knowingly allow to be processed or manufactured on land owned, occupied, or controlled by him or her any marijuana or marijuana concentrate except as authorized pursuant to part 1 of article 42.5 of title 12, C.R.S., or part 2 of article 80 of title 27, C.R.S.

3

unconstitutional as applied to him because Amendment 64 legalized extracting hash oil by legalizing "processing . . . marijuana plants."

¶9 We begin with the standard of review for constitutional challenges to statutes. Next, we discuss Lente's challenge to the statute and explain how hash-oil extraction works. Then, we consider whether unlicensed hash-oil extraction is protected under Amendment 64. We conclude it is not. Amendment 64 distinguishes between processing marijuana plants, which doesn't require a license, and manufacturing marijuana, which does. Under the statutory scheme in place when voters approved Amendment 64, extracting hash oil was manufacturing, and we presume Amendment 64 adopted that meaning. Last, we reject Lente's assertion that the statute is either overbroad or vague in light of Amendment 64.

## A. Standard of Review

¶10 We review the constitutionality of statutes de novo. Justus v. State, 2014 CO 75, ¶ 17, 336 P.3d 202, 208. We presume statutes are constitutional, and a challenger has the burden to prove a statute unconstitutional. Id. When a constitutional challenge is based on an asserted direct conflict between the statute and the Colorado Constitution, we must uphold the statute absent a "clear and unmistakable" conflict. E-470 Pub. Highway Auth. v. Revenig, 91 P.3d 1038, 1041 (Colo. 2004) (quoting City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial, 3 P.3d 427, 440 (Colo. 2000)).

## B. Lente's Challenge to the Statute

¶11 Lente was charged under section 18-18-406(2)(a)(I). That provision makes it "unlawful for a person to knowingly process or manufacture any marijuana or

4

marijuana concentrate" except in circumstances inapplicable here. § 18-18-406(2)(a)(I).

Article 18 of the criminal code does not define "process," but it defines "manufacture":

> "Manufacture" means to produce, prepare, propagate, compound, convert, or process a controlled substance, directly or indirectly, by extraction from substances of natural origin, chemical synthesis, or a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

§ 18-18-102(17), C.R.S. (2016).

¶12 As applied to Lente's hash-oil extraction, he argues, that statute conflicts with Amendment 64. Amendment 64 legalized possession of one ounce or less of marijuana and some activities relating to marijuana. See Colo. Const. art. XVIII, § 16. The Amendment creates tiers of protected activities. First, it sets out "Personal use of marijuana": activities that are protected for all individuals at least twenty-one years old. Id. § 16(3). Second, it sets out "Lawful operation of marijuana-related facilities": activities associated with the regulated-marijuana business, some of which are protected only for those with certain current, valid licenses. Id. § 16(4).

¶13 Lente had no license,[3] but he contends that extracting hash oil falls under the protected personal use of "processing . . . marijuana plants," id. § 16(3)(b). The People counter that hash-oil extraction is not a protected personal use, but instead amounts to the facility-operation activity of "manufacturing . . . marijuana," which requires a license. Id. § 16(4)(d). To settle the dispute, we must understand the nature of hash-oil extraction and then interpret Amendment 64.

---

[3] Lente does not dispute the state's assertion that he was unlicensed.

### C. Hash-Oil Extraction and the "Butane Method"

¶14 The psychoactive ingredient in marijuana is tetrahydrocannabinol, or "THC." Hash-oil extraction is the process of separating concentrated THC—a viscous liquid ("hash oil")—from the marijuana plant. The extractor puts parts of a marijuana plant—usually compressed by chopping or grinding—into a tube. He or she then pours a chemical solvent through the plant material. The solvent dissolves and holds the THC from the plant and then passes through a filter into another container. The extractor then separates the THC from the solvent by letting the solvent evaporate, a process which can be (and usually is) accelerated by applying heat.

¶15 The "butane method" of hash-oil extraction—using butane as the solvent—is particularly dangerous due to the nature of butane. Butane gas is highly flammable, odorless, and heavier than air. Because it is heavy, it falls and pools, where it can be ignited by heat sources like pilot lights, cigarettes, or even static electricity. Explosions typically occur because of inadequate ventilation or because people move the butane-THC mixture from a well-ventilated area to an unventilated space (like a freezer) before the butane has finished evaporating.

### D. Lente's As-Applied Challenge Fails Because Amendment 64 Does Not Protect Unlicensed Hash-Oil Extraction

#### 1. Standards of Interpretation and Controlling Precedent

¶16 To determine whether hash-oil extraction is a protected personal use under Amendment 64, we begin with our standards for interpreting citizen initiatives. Our goal in interpreting a citizen initiative is to "give effect to the electorate's intent." <u>Colo.</u>

Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 20, 269 P.3d 1248, 1253 (quoting Davidson v. Sandstrom, 83 P.3d 648, 654 (Colo. 2004)). We look to the language used and its plain and ordinary meaning. Id., 269 P.3d at 1253–54. If the language is unambiguous, we enforce it as written. Id. at 1254. But if the language is ambiguous, we "construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment." Id. (quoting Zaner v. City of Brighton, 917 P.2d 280, 283 (Colo. 1996)).

¶17 Additionally, if an amendment's language had a settled meaning under the existing law at the time of the amendment, we presume the electorate intended to adopt that meaning. See id. This is because we presume the electorate is aware of the existing law at the time it clarifies or amends that law. Id.

¶18 Colorado Ethics Watch guides our analysis today. There, a watchdog group complained that two political organizations had engaged in "express advocacy" without meeting certain requirements, thus violating Amendment 27, a citizen initiative. See id. at ¶ 11, 269 P.3d at 1252. The organizations had distributed political ads that, while avoiding specific words of endorsement, nonetheless identified candidates for office and favorably discussed their qualifications, views, and plans. Id. at ¶ 9, 269 P.3d at 1252. The watchdog argued that the plain meaning of "express advocacy" covered all ads that "unmistakably communicate support . . . [for] a candidate." Id. at ¶ 27, 269 P.3d at 1256.

¶19 We explained, "[T]o resolve [the] case, we determine if there was a settled definition of 'express advocacy' when the voter initiative was adopted . . . ." Id. at ¶ 20,

269 P.3d at 1254. At the time of the voter initiative, we determined, "express advocacy" had been limited to ads using specific terms of endorsement,[4] none of which appeared in the ads at issue. Id. at ¶¶ 26, 38, 269 P.3d at 1255, 1258. Therefore, we rejected the watchdog's argument, reasoning that it would "require us to ignore the settled definition of 'express advocacy' that existed at the time that Amendment 27 was adopted by the voters." Id. at ¶ 27, 269 P.3d at 1256.

## 2. We Presume Amendment 64 Adopted the Settled Meaning that Extracting Hash Oil Is Manufacturing — Not Processing

¶20 Because Amendment 64 displaced portions of the Controlled Substances Act ("CSA"), §§ 18-18-101 to -605, C.R.S. (2012), we look to the CSA to determine whether the terms at issue—"manufacturing" and "processing"—had settled meanings. We conclude they did, at least sufficiently settled to answer the question before us today. Although the CSA is unclear as to exactly what does fall within "processing," it tells us specifically what does not: extraction or chemical synthesis. We derive this meaning from two provisions of the CSA.

¶21 First, under section 18-18-406(6)(a)(I), C.R.S. (2012),[5] "process" and "manufacture" must have different meanings. That provision makes it unlawful to "knowingly process or manufacture any marijuana." Id. By juxtaposing "process" and "manufacture," the text demands different meanings of those terms. Were we to

---

[4] The specific terms were those in the list of "magic words" from Buckley v. Valeo, 424 U.S. 1, 44 n.52 (1976), and their substantially similar synonyms.

[5] We cite the pertinent subsections that were in effect when Amendment 64 was adopted in 2012. Although subsection (6)(a)(I) of section 18-18-406 has since been moved to subsection (2)(a)(I), it has not otherwise changed.

construe one term to swallow the other, or to be its equal, then the other term would be superfluous. We avoid such constructions. Spahmer v. Gullette, 113 P.3d 158, 162 (Colo. 2005) ("We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous.").

¶22 Second, the CSA narrowly defines "manufacturing" as extraction or chemical synthesis. While the statutory definition covers a broad range of actions—"produce, prepare, propagate, compound, convert, or process"—it limits the covered forms of those actions to two specific methods: extraction or chemical synthesis. See § 18-18-102(17), C.R.S. (2012).

¶23 So, under the CSA, "manufacturing" means extraction or chemical synthesis, and "processing" must mean something else. Thus, processing must exclude extraction and chemical synthesis. Because the method of making hash oil at issue here clearly involves extraction, it is manufacturing, not processing, under the CSA.

¶24 This meaning under the CSA was settled when citizens approved Amendment 64, so we presume Amendment 64 adopted it. See Colo. Ethics Watch, ¶¶ 26–28, 269 P.3d at 1255–56.

### 3. The Plain Language of Amendment 64 Supports Classifying Hash-Oil Extraction as Manufacturing—Not Processing

¶25 The plain language of Amendment 64 is consistent with the statutory approach of classifying hash-oil extraction as manufacturing rather than processing. Just as the CSA distinguished between manufacturing and processing, so does Amendment 64.

Important here, manufacturing is protected only as a licensed facility-operation activity, not as a personal use.

¶26 Further, the language of the personal-use section suggests it protects only mechanical or physical processes, like chopping and drying, rather than chemical processes, like extraction. Although the constitution defines "marijuana" broadly to include marijuana concentrate and extracted resin, the personal-use section does not protect processing "marijuana." It protects "processing . . . marijuana plants." Colo. Const. art. XVIII, § 16(3)(b) (emphasis added). This qualification ("plants") suggests an intent to exclude processing beyond the point that plant material is involved. If the personal-use section were meant to cover processing all forms of marijuana (like THC molecules in a butane solution), it could have said so. Indeed, while the phrase "processing . . . marijuana" does appear in Amendment 64, it appears in the facility-operation section, not the personal-use section. Compare id. § 16(3)(b), with id. § 16(4)(c), (d).

### 4. The Statute Is Not Unconstitutional as Applied to Lente

¶27 We conclude that, under Amendment 64, making hash oil by extraction is manufacturing, not processing. Because Amendment 64 presents no barrier to a prosecution for unlicensed hash-oil extraction, Lente has failed to show that section 18-18-406(2)(a)(I) is unconstitutional as applied to him. Thus, the trial court erred by dismissing the manufacturing charge on these grounds.

## E. Lente Has Not Shown that the Statute Is Overbroad or Vague

¶28  We reject Lente's alternate arguments that section 18-18-406(2)(a)(I) is either overbroad or vague.

¶29  Lente argues that the statute is overbroad because it sweeps in conduct that is protected by Amendment 64. This argument fails because the overbreadth doctrine applies only to statutes "that burden constitutionally protected speech or expressive conduct." People v. Graves, 2016 CO 15, ¶ 12 n.6, 368 P.3d 317, 323 n.6.

¶30  Lente also contends that the statute is unconstitutionally vague in light of Amendment 64 because it is difficult to discern where the boundary lies between permissible and impermissible processing. However, "[a] litigant who engages in conduct that is clearly proscribed by a statute cannot complain of the vagueness of the law as applied to the conduct of others." Id. at ¶ 19, 368 P.3d at 325. Lente's conduct is clearly proscribed by the statute because, as we explained above, hash-oil extraction squarely fits the statutory definition of manufacturing marijuana. Thus, Lente cannot prevail on a vagueness claim.

## III. Conclusion

¶31  We hold that Amendment 64 does not protect unlicensed hash-oil extraction. Therefore, the trial court erred by ruling that section 18-18-406(2)(a)(I) is unconstitutional as applied to Lente. We reverse the trial court's order dismissing the charge against Lente, and we remand for further proceedings.

**CHIEF JUSTICE RICE** dissents, and **JUSTICE GABRIEL** joins in the dissent.

11

CHIEF JUSTICE RICE, dissenting.

¶32    Applying what it views to be the plain language of Amendment 64 to the Colorado Constitution, Colorado Constitution article XVIII, section 16(3)(b), and sections 18-18-102(17) and 18-18-406(2)(a)(I), C.R.S. (2012), the majority concludes that hash-oil extraction via the butane method is "manufacturing" marijuana or marijuana concentrate and therefore affirms Lente's conviction for manufacturing marijuana or marijuana concentrate.  Maj. op. ¶ 3.  In my view, however, the butane method of hash-oil extraction falls under the definition of "processing," which Amendment 64 legalized.  Further, the statutory scheme under which Lente was convicted defined "manufacturing" and "processing" as separate terms and—in another section—defined "manufacturing" as including the term "processing."  Therefore, the statutory scheme was so vague that an ordinary person would not have known that it proscribed hash-oil extraction via butane, and Lente's conviction should be vacated.  Accordingly, I respectfully dissent.

## I.  Analysis

¶33    I begin by considering whether, under the plain language of the Controlled Substances Act ("CSA"), sections 18-18-101 to -605, C.R.S. (2012), and Amendment 64, hash-oil extraction via butane could qualify as "processing" marijuana or marijuana concentrate.  From there, I determine that, under the plain language of the statute, hash-oil extraction via butane qualifies as "processing."  Second, I conclude that, in any event, due to confusion over the interplay between the terms "manufacturing" and "processing," the statute as applied to Lente is overly vague and his conviction for

1

manufacturing marijuana or marijuana concentrate should be vacated. Finally, I argue that because of the vagueness of the existing law, we should apply the rule of lenity to Lente.

## A. The Butane Extraction Method is "Processing"

¶34 Amendment 64 to the Colorado State Constitution legalized, for "persons twenty-one years of age or older," "processing . . . no more than six marijuana plants[.]" Colo. Const. art. XVIII, § 16(3)(b). This case hinges on whether hash-oil extraction via butane qualifies as "processing"—and thus is legal—or if it is "manufactur[ing] any marijuana or marijuana concentrate" and therefore is illegal under section 18-18-406(2)(a)(I).

¶35 As the majority noted, Amendment 64 displaces portions of the CSA, and, therefore, the CSA controls whether the terms "manufacturing" and "processing" had settled meanings at the time Amendment 64 was enacted. See maj. op. ¶ 20.

¶36 Under section 18-18-406(2)(a)(I), "[i]t is unlawful for a person to knowingly process or manufacture any marijuana or marijuana concentrate[.]" If we were to look only at subsection 406(2)(a)(1), we would conclude that "process" and "manufacture" must have independent meanings. See maj. op. ¶ 21; Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill., 790 P.2d 827, 830 (Colo. 1990) ("A statute or ordinance should be construed so as to give effect to every word, and a construction should not be adopted which renders a word superfluous.").

¶37 But subsection 406(2)(a)(1) is not the only portion of the CSA that discusses processing and manufacturing. In subsection 18-18-102(17), the CSA states that

2

"'manufacture' means to produce, prepare, propagate, compound, convert, or process a controlled substance, directly or indirectly, by extraction from substances of natural origin, chemical synthesis, or a combination of extraction and chemical synthesis." (Emphasis added.) Therefore, under the CSA's own definitions, "'manufacture' means . . . process." If "manufacture" includes "process," the two cannot be separate and distinct.

¶38    Further, subsection 102(17) states that "'manufacture' means to . . . process . . . directly or indirectly, by extraction from substances of natural origin, chemical synthesis, or a combination of extraction and chemical synthesis." (Emphasis added.) Reading the statute with only the relevant language, it states that manufacture means to process by extraction from substances of natural origin. Therefore the phrase "by extraction from substances of natural origin" modifies both the term "to process" and the other terms preceding it ("produce, prepare, propagate, compound, convert"). Webster's Dictionary also supports this reading, as it defines "process" as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result," "to prepare for market, manufacture, or other commercial use by subjecting to some process," or "to make usable by special treatment." Process, Webster's Third New International Dictionary (unabr. ed. 2002). The majority opinion, in contrast, does not even attempt to define the term "process" and merely states that "manufacturing means extraction or chemical synthesis, and processing must mean something else." See maj. op. ¶ 23 (emphasis added).

3

¶39 The butane method of hash-oil extraction uses butane as a chemical solvent to extract tetrahydrocannabinol ("THC") from marijuana plants. See maj. op. ¶ 14. Subsection 102(17) defines "process" as "extraction from substances of natural origin," and Lente was extracting THC from marijuana. Therefore, under the clear, unambiguous language of the statute and Amendment 64, Lente was "processing" marijuana plants—conduct which Amendment 64 legalized.

## B. The Current Statutory Scheme is Vague as Applied to Lente

¶40 Even assuming the statutory language is not clear that Lente's actions qualified as "processing," Lente's conviction for manufacturing marijuana or marijuana concentrate should be vacated because the CSA, in conjunction with Amendment 64, is vague. Vagueness is a doctrine "rooted in principles of due process," which "requires laws to give fair warning of prohibited conduct so that individuals may conform their actions accordingly." People v. Graves, 2016 CO 15, ¶ 17, 368 P.3d 317, 324. Under this doctrine, a criminal law must "establish standards that are sufficiently precise to avoid arbitrary and discriminatory enforcement." Id. A conviction fails to comport with due process because of vagueness when the law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Id.

¶41 Here, two sections of the CSA define "manufacturing" and "processing" differently. One, section 18-18-406(2)(a)(I), treats the two as different terms. But section 18-18-102(17) states that the definition of "manufacture" includes the word "process."

Under the current Colorado statutory scheme and Amendment 64, "manufacturing" is illegal, but "processing" is not.

¶42     Webster's Dictionary confirms the similarity between the two terms. As noted above, Webster's defines "process" as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result," "to prepare for market, manufacture, or other commercial use by subjecting to some process," or "to make usable by special treatment." Process, Webster's Third New International Dictionary (unabr. ed. 2002). In contrast, Webster's Dictionary defines "manufacture" as "to make (as raw material) into a product suitable for use" and as "to make from raw materials by hand or by machinery." Manufacture, Webster's Third New International Dictionary (unabr. ed. 2002). Arguably, Lente's hash-oil extraction could fit under either the definition of "manufacture" or "process." Lente "manufactured" a raw material (marijuana plants) into something more suitable to his use (hash oil), and he "processed" marijuana plants by subjecting the plants to a particular method (butane extraction) designed to create a particular result (hash oil). One could even combine the terms and argue that Lente "processed . . . marijuana plants" in order to "manufacture" hash oil. But in any event, with conflicting readings of the various terms "manufacture" and "process," the statutory scheme in place was not sufficiently clear so as to put a person of ordinary intelligence on notice that hash-oil extraction via butane was proscribed.

¶43     Finally, this is a case in which the intents of the electorate and the General Assembly remain obscured after "utilizing the various aids of statutory construction,"

5

and therefore I believe we should turn to the rule of lenity. See People v. Summers, 208 P.3d 251, 258 (Colo. 2009). "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Santos, 553 U.S. 507, 514 (2008). In this case there exist "two competing and viable alternatives" to interpreting the statutory language and Amendment 64. Therefore we should apply the rule of lenity in favor of Lente. See Summers, 208 P.3d at 258.

## II. Conclusion

¶44 For these reasons, I would vacate Lente's conviction for manufacturing marijuana or marijuana concentrate. Accordingly, I would affirm the judgment of the court of appeals. I therefore respectfully dissent.

I am authorized to state that JUSTICE GABRIEL joins in this dissent.