Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 29, 2018

**2018 CO 6**

**No. 16SC637, <u>Coloradans for a Better Future v. Campaign Integrity Watchdog</u>—Election Law—Disclosure.**

A lawyer filed a report for Coloradans for a Better Future ("Better Future"), a political organization, without charging a fee. The supreme court reverses the court of appeals' determination that that Better Future was required to report the donated legal service as a "contribution" under Colorado's campaign-finance laws. The constitutional definition of "contribution" does not address political organizations, and neither part of the statutory definition relied on by the court of appeals covers legal services donated to political organizations. Section 1-45-103(6)(b), C.R.S. (2017), does not apply to political organizations, and the word "gift" in section 1-45-103(6)(c)(I), C.R.S. (2017), does not include gifts of service.

**2018 CO 6**

**Supreme Court Case No. 16SC637**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2073

**Petitioner:**

Coloradans for a Better Future,

v.

**Respondent:**

Campaign Integrity Watchdog.

**Judgment Reversed**
*en banc*
January 29, 2018

**Attorneys for Petitioner:**
Paul M. Sherman
Samuel B. Gedge
  *Arlington, Virginia*

KBN Law, LLC
Mario Nicolais
  *Lakewood, Colorado*

**Authorized Representative of Respondent:**
Matthew Arnold
  *Denver, Colorado*

**Attorneys for Amici Curiae Diana Brickell, Tammy Holland, and Karen Sampson:**
Wiley Rein LLP
Robert L. Walker
A. Louisa Brooks
  *Washington, DC*

Beem & Isley, P.C.
Clifford L. Beem
A. Mark Isley
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Secretary of State:**
Cynthia H. Coffman, Attorney General
Frederick R. Yarger, Solicitor General
Matthew D. Grove, Assistant Solicitor General
Grant T. Sullivan, Assistant Solicitor General
  *Denver, Colorado*

**Attorneys for Amicus Curiae Institute for Free Speech:**
Allen Dickerson
Tyler Martinez
  *Alexandria, Virginia*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 Colorado's campaign-finance laws require political organizations like Coloradans for a Better Future to report contributions. Jonathan Anderson, a lawyer, filed a termination report for Better Future without requiring payment for his legal work, and Better Future didn't report his service as a contribution. Campaign Integrity Watchdog complained to Colorado's Secretary of State that Better Future should have done so. An Administrative Law Judge, or ALJ, dismissed Watchdog's complaint on the merits.

¶2 The court of appeals reversed in part, holding that Anderson's service counted as a "contribution" to Better Future as the word is defined in section 1-45-103(6), C.R.S. (2017), of the Fair Campaign Practices Act, §§ 1-45-101 to -118, C.R.S. (2017) ("FCPA"). If the service was donated, the court reasoned, it was a "gift" under section 1-45-103(6)(c)(I). If it was billed but not paid, it was an undercompensated service under section 1-45-103(6)(b). Either way, the service constituted a reportable contribution under the FCPA.

¶3 We conclude that the uncompensated legal services at issue here are not "contributions" to a political organization under Colorado's campaign-finance laws. The constitutional definition of "contribution" does not address political organizations, and neither part of the FCPA definition relied on by the court of appeals covers legal services donated to political organizations. Section 1-45-103(6)(b) does not apply to political organizations, and the word "gift" in section 1-45-103(6)(c)(I) does not include gifts of service. Accordingly, the court of appeals erred in holding that Better Future

3

was required to report Anderson's donated legal services. We reverse and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4      Coloradans for a Better Future ("Better Future") engaged in the 2012 primary-election campaign as a registered political organization. In that campaign, Matthew Arnold ran for Regent at Large of the University of Colorado. Better Future purchased one radio advertisement criticizing Arnold and another supporting his opponent, Brian Davidson. Arnold lost the primary to Davidson.

¶5      Arnold, or his organization Campaign Integrity Watchdog ("Watchdog"), has since filed a series of campaign-finance complaints against Better Future; this is the fourth. Arnold filed the first two complaints individually. He then created Watchdog, of which he is the sole member. Watchdog filed the third and fourth complaints.

¶6      First, Arnold alleged campaign-finance violations based on Better Future's radio advertisements in the 2012 primary. Jonathan Anderson represented Better Future in the matter, which was litigated in 2012 and early 2013. The Administrative Law Judge ("ALJ") rejected some of the allegations, but fined Better Future $4525 for failing to properly report the advertisements as electioneering communications.

¶7      Second, Arnold complained that Better Future should have, but had not, reported Anderson's legal work on the first complaint as either an expenditure or a contribution under the Colorado FCPA. Arnold argued that if Better Future had paid Anderson, then that was a reportable expenditure; and if Better Future had not paid him, then it had received a reportable contribution of services. This time, Better Future

4

didn't show up to defend itself and wasn't represented by counsel. The ALJ dismissed the complaint all the same, concluding that paying for an attorney is not an "expenditure." Because no evidence showed that Anderson had worked for free, the ALJ did not reach Arnold's contribution argument. The court of appeals affirmed the ALJ's decision in an unpublished decision. Arnold v. Coloradans for a Better Future, No. 14CA122 (Colo. App. Feb. 5, 2015).

¶8 Third, Watchdog complained that Better Future had failed to report a contribution when a third party had paid for costs that Better Future had owed. An ALJ determined that Better Future had, in fact, reported the contribution.

¶9 Fourth, Watchdog filed the complaint at issue here, alleging once again that Better Future had failed to report contributions or spending related to Anderson's representation of Better Future. Anderson had represented Better Future in 2012 and 2013 on the first campaign-finance claim, winding down his representation in February 2013. But he had acted on Better Future's behalf again in January 2014 when he filed a contribution and termination report for Better Future. Watchdog complained that Better Future should have reported all of Anderson's services, either as spending or contributions. Again, Better Future did not appear in administrative court.

¶10 Watchdog subpoenaed Anderson's law firm for billing records related to Better Future, and Anderson filed a motion to quash the subpoena. The ALJ denied that motion, and the firm turned over documents showing that it had invoiced Better Future about $5000 in March 2013 for Anderson's work through February 2013 on the first claim, but that it had not invoiced Better Future for Anderson's January 2014 work.

5

¶11 The ALJ inferred that Better Future had paid for the invoiced 2012–2013 legal services, and it rejected Watchdog's claim that Better Future was required to report that spending.[1] The ALJ also rejected the argument that Better Future should have reported Anderson's un-invoiced 2014 services as a contribution. It reasoned that the services were not provided "for the purpose of promoting" a candidate's election or nomination under the definition of "contribution" in article XXVIII, section 2(5)(a)(IV) of the Colorado Constitution.

¶12 Watchdog appealed, and the court of appeals affirmed the ALJ's determination that Better Future had not been required to report the invoiced 2012–2013 services, but it reversed the ALJ's determination that the un-invoiced 2014 services were not reportable contributions. It held that the ALJ erred by applying only the constitutional definition of "contribution," and it went on to apply the statutory definition of "contribution" in section 1-45-103(6). It explained that the un-invoiced 2014 services were a "contribution" either as undercompensated services under section 1-45-103(6)(b) or as a "gift" under section 1-45-103(6)(c)(I).

¶13 Better Future petitioned for review of the court of appeals' holding that the un-invoiced 2014 services were a contribution,[2] and we granted certiorari.[3]

---

[1] You may wonder why the complaint relating to the 2012–2013 legal services was decided a second time on the merits. The ALJ determined that issue preclusion was inapplicable here, and that determination is not before us.

[2] Watchdog did not file a cross-petition seeking review of the court of appeals' holding that the invoiced 2012–2013 services were not reportable. So, that issue is not before us.

## II. Analysis

¶14 We begin with the standard of review and principles of interpretation. Next, we survey the meaning of "contribution" under Colorado's multi-layered campaign-finance scheme, and we determine that the statutory definition, but not the constitutional definition, applies to political organizations. Turning to the statutory definition, we consider whether a contribution under section 1-45-103(6)(b), the amount of which is to be "determined by the candidate committee," can apply to a political organization like Better Future. We conclude it cannot. Finally, we examine the term "gift" in the phrase, "Any payment, loan, pledge, gift, advance of money, or guarantee of a loan made to any political organization." § 1-45-103(6)(c)(I). We conclude that contributions under this subsection are limited to monetary aid to political organizations, and therefore the term "gift" does not include donated services.

### A. Standard of Review and Principles of Interpretation

¶15 We review questions of constitutional and statutory interpretation de novo. Gessler v. Colo. Common Cause, 2014 CO 44, ¶ 7, 327 P.3d 232, 235.

¶16 In construing statutes and citizen initiatives, we seek to give effect to the General Assembly's and the electorate's intent, respectively. See Teague v. People, 2017 CO 66, ¶ 8, 395 P.3d 782, 784 (statute); People v. Lente, 2017 CO 74, ¶ 16, 406 P.3d 829, 832 (citizen initiative). We read words and phrases in context, § 2-4-101, C.R.S. (2017),

---

[3] We granted certiorari on the following issue: "Whether the court of appeals erred in concluding that pro bono and reduced cost legal services are 'contributions' within the meaning of Colorado's campaign-finance laws."

according them their plain and ordinary meanings, <u>Teague</u>, ¶ 8, 395 P.3d at 784; <u>Lente</u>, ¶ 16, 829 P.3d at 832.  If the language is clear, we apply it as written.  <u>Teague</u>, ¶ 8, 395 P.3d at 784; <u>Lente</u>, ¶ 16, 829 P.3d at 832.

## B. The Fair Campaign Practices Act, Not the Constitution, Defines "Contribution" to Political Organizations

¶17  Three primary sources provide campaign-finance law in Colorado.  Article XXVIII of the Colorado Constitution, a citizen initiative, limits and requires reporting of some political contributions and spending, and it provides for private enforcement of campaign-finance law.  The FCPA covers more of the same ground.  Finally, the Colorado Secretary of State (the "Secretary") promulgates additional campaign-finance rules.  Dep't of State, 8 Colo. Code Regs. 1505-6 (Dec. 15, 2017).

¶18  During the time at issue here, Better Future was registered with the Secretary as a political organization, and neither party disputes that status.  Reporting requirements for political organizations are covered under section 1-45-108.5, C.R.S. (2017), of the FCPA.  That section requires a political organization to report "[a]ny contributions it receives."  § 1-45-108.5.

¶19  So what is a contribution?  The answer is surprisingly complex.  "Contribution" is defined in both the FCPA, § 1-45-103(6), and in article XXVIII of the constitution, and the FCPA definition incorporates the constitutional definition.  § 1-45-103(6)(a) ("'Contribution' shall have the same meaning as set forth in section 2(5) of article XXVIII of the state constitution.").  Each of those definitions has multiple subparts.  And

8

if that weren't enough, the meaning varies depending on the class of political actor to which the term "contribution" is being applied.

¶20 Before we decide whether the donated legal service to Better Future counted as a "contribution," we must first establish which parts of the two definitions apply to political organizations like Better Future.

¶21 The constitutional definition, which was implemented in 2002, contains subparts that govern a range of political entities, but makes no mention of political organizations:

> (5)(a) "Contribution" means:
>
> > (I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made <u>to any candidate committee, issue committee, political committee, small donor committee, or political party</u>;
> >
> > (II) Any payment made to a third party <u>for the benefit of any candidate committee, issue committee, political committee, small donor committee, or political party</u>;
> >
> > (III) The fair market value of any gift or loan of property made <u>to any candidate committee, issue committee, political committee, small donor committee or political party</u>;
> >
> > (IV) Anything of value given, directly or indirectly, <u>to a candidate</u> for the purpose of promoting the candidate's nomination, retention, recall, or election.
>
> (b) "Contribution" does not include services provided without compensation by individuals volunteering their time <u>on behalf of a candidate, candidate committee, political committee, small donor committee, issue committee, or political party</u>; a transfer by a membership organization of a portion of a member's dues <u>to a small donor committee or political committee</u> sponsored by such membership organization; or payments by a corporation or labor organization for the costs of establishing, administering, and soliciting funds from its own employees or members <u>for a political committee or small donor committee</u>.

Colo. Const. art. XXVIII, § 2(5) (emphases added).

¶22 Not until the FCPA was amended in 2007 did Colorado's campaign-finance laws specifically address political organizations. See Ch. 289, 2007 Colo. Sess. Laws 1224. That amendment added (1) an entry for "political organization" to the FCPA's definitions section and (2) a new section, 1-45-108.5, to require disclosures for political organizations. Ch. 289, secs. 1, 3, §§ 1-45-103, -108.5, 2007 Colo. Sess. Laws 1224, 1224–25.

¶23 The 2007 amendment also added section 1-45-103(6)(c) to the FCPA definition of "contribution," almost mirroring subsections (I)–(III) of article XXVIII, section 2(5)(a), but expanding them to apply to a "political organization." Ch. 289, sec. 2, § 1-45-103, 2007 Colo. Sess. Laws 1224, 1225. Compare:

| (c) "Contribution" also includes: | (5)(a) "Contribution" means: |
|---|---|
| (I) Any payment, loan, pledge, gift, advance of money, or guarantee of a loan made to any political organization; | (I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee, issue committee, political committee, small donor committee, or political party; |
| (II) Any payment made to a third party on behalf of and with the knowledge of the political organization; or | (II) Any payment made to a third party for the benefit of any candidate committee, issue committee, political committee, small donor committee, or political party; |
| (III) The fair market value of any gift or loan of property made to any political organization. | (III) The fair market value of any gift or loan of property made to any candidate committee, issue committee, political committee, small donor committee or political party;<br><br>. . . . |

| § 1-45-103(6) (emphases added). | Colo. Const. art. XXVIII, § 2(5) (emphases added). |
|---|---|

¶24    We conclude that only the FCPA definition applies to political organizations. The FCPA specifically addresses political organizations, but article XXVIII does not. And no subpart of the constitutional definition is generally applicable; every subpart lists the specific class or classes to which it applies.

¶25    We disagree with the Secretary's argument that the limitation in subsection 5(b) of the constitutional definition applies to political organizations. True, the FCPA definition incorporates the constitutional definition. See § 1-45-103(6)(a). But article XXVIII, section 2(5)(b) explicitly lists the political entities to which the definition applies, and "political organization" isn't among them. See Colo. Const. art. XXVIII, § 2(5)(b) ("'Contribution' does not include services provided without compensation by individuals volunteering their time on behalf of a candidate, candidate committee, political committee, small donor committee, issue committee, or political party . . . ." (emphasis added)). Had the legislature intended to extend the entire constitutional definition to political organizations merely by incorporating the constitutional definition into the FCPA definition, then it would not have bothered to expressly extend three specific provisions of the constitutional definition to political organizations. Compare § 1-45-103(6)(c)(I)–(III), with Colo. Const. art. XXVIII, § 2(5)(a)(I)–(III).

¶26    By the same logic, the ALJ erred by applying article XXVIII, section 2(5)(a)(IV) to a political organization like Better Future. That subsection counts as a contribution "[a]nything of value given, directly or indirectly, to a candidate for the purpose of

11

promoting the candidate's nomination, retention, recall, or election."  Colo. Const. art. XXVIII, § 2(5)(a)(IV) (emphasis added).  It applies exclusively to things given to candidates, not to things given to other classes of political speakers like Better Future. Even if the phrase "given . . . indirectly . . . to a candidate" could be read to sweep in things given to other speakers supporting the candidate, context suggests the electorate had something different in mind.  Other provisions in the same series demonstrate that where a meaning is intended to apply to multiple classes, it lists out those classes.  See Colo. Const. art. XXVIII, § 2(5)(a)(I)–(III).  We therefore presume that section 2(5)(a)(IV) also lists the only class to which it applies: "a candidate."

¶27    Accordingly, whether Anderson's 2014 services counted as a reportable contribution for Better Future—a political organization—turns on the FCPA definition of "contribution."  The court of appeals applied the FCPA definition and held that donated legal services count as contributions under subsections (6)(b) or (6)(c)(I) of section 1-45-103, and Better Future challenges that holding.  We turn to those subsections now.

### C. Section 1-45-103(6)(b) Applies Only to Candidate Committees

¶28    Section 1-45-103(6)(b) says:

"Contribution" includes, with regard to a contribution for which the contributor receives compensation or consideration of less than equivalent value to such contribution, including, but not limited to, items of perishable or nonpermanent value, goods, supplies, services, or participation in a campaign-related event, an amount equal to the value in excess of such compensation or consideration as determined by the candidate committee.

12

(Emphasis added.)

¶29 Because the amount of the contribution is "determined by the candidate committee," Better Future argues that section 1-45-103(6)(b) applies only to candidate committees, and we agree. We interpret statutes in a way that gives effect to every word. Spahmer v. Gullette, 113 P.3d 158, 162 (Colo. 2005). Were this subsection to apply to entities other than candidate committees, then the phrase "as determined by the candidate committee" would be superfluous in those cases. We will not adopt such a construction. See id. Thus, the plain meaning of the statute is that section 1-45-103(6)(b) applies only to candidate committees.

¶30 Watchdog points out that we should avoid constructions that would lead to absurd results, see Pineda-Liberato v. People, 2017 CO 95, ¶ 22, 403 P.3d 160, 164, and it argues that treating undercompensated services as a contribution when given to candidate committees but not when given to other entities would be absurd.

¶31 But it is not absurd to make contribution laws stricter for candidate committees than for other entities. "The hallmark of corruption is the financial quid pro quo: dollars for political favors." Fed. Election Comm'n v. Nat'l Conservative Political Action Comm., 470 U.S. 480, 497 (1985). Quid pro quo corruption, or even just the appearance of it, threatens the "integrity of our system of representative democracy," Buckley v. Valeo, 424 U.S. 1, 26–27 (1976). Given the significance of society's interest in preventing such corruption, the First Amendment tolerates limits on contributions to candidates even when it prohibits limits for other political speakers. See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 359 (2010). Because a candidate

13

committee is comprised only of the candidate and those under the candidate's authority, see Colo. Const. art. XXVIII, § 2(3), this same interest in preventing the appearance of quid pro quo corruption justifies defining contributions to candidate committees more broadly than contributions to other political entities. Indeed, the constitution itself defines "contribution" more broadly for candidates than it does for other entities. Compare Colo. Const. art. XXVIII, § 2(5)(a)(I)–(III) (definitions applicable to five types of entities), with § 2(5)(a)(IV) (definition applicable only to a "candidate").

¶32 We conclude that undercompensated services to political organizations are not contributions under section 1-45-103(6)(b). But could donated services be a "gift" under section 1-45-103(6)(c)(I)? We consider that now.

### D. The Term "Gift" Under Section 1-45-103(6)(c)(I) Means Monetary Gift and Does Not Cover Donated Services

¶33 Under section 1-45-103(6)(c)(I), "contribution" includes "[a]ny payment, loan, pledge, gift, advance of money, or guarantee of a loan made to any political organization." The court of appeals held that donated services could count as a "gift" under this provision, but Better Future contends that "gift" here means only a monetary gift.

¶34 The statute does not define "gift," so we look to the ordinary meaning of the word when read in context. See Roup v. Commercial Research, LLC, 2015 CO 38, ¶ 8, 349 P.3d 273, 276 ("When a statute does not define a term, we assume that the General Assembly intended to give the term its usual and ordinary meaning."); § 2-4-101, C.R.S.

14

(2017) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

¶35 The word "gift," standing alone, could refer to uncompensated service. "Gift," as relevant here, is defined merely as "something given." Gift, Webster's New College Dictionary (2005). The related definition of "give" is "to turn over the possession or control of to someone without cost or exchange; make a gift of." Give, Webster's New College Dictionary (2005) (emphasis added). It would not be unordinary to say that one could "make a gift of" service.

¶36 But "gift" does not stand alone in section 1-45-103(6)(c)(I), and two aspects of the statutory context suggest that the General Assembly used "gift" narrowly to mean a monetary gift.

¶37 First, because the General Assembly deposited the word "gift" among monetary terms, we infer that it meant monetary gift. "It is a familiar principle of statutory construction that words grouped in a list should be given related meaning." Third Nat'l Bank v. Impac Ltd., Inc., 432 U.S. 312, 322 & n.16 (1977) (describing the associated-words canon, or "noscitur a sociis"); Young v. Bright Sch. Dist. 27J, 2014 CO 32, ¶ 24, 325 P.3d 571, 579 ("Under noscitur a sociis, 'a word may be known by the company it keeps.'" (quoting Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 287 (2010)). For example, "if a statute is said to apply to 'tacks, staples, nails, brads, screws, and fasteners,' it is clear from the words with which they are associated that the word nails does not denote fingernails and that staples does not mean reliable and customary food items." Antonin Scalia & Bryan A.

Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 196 (2012). Of course, fingernails and framing nails are apples and oranges; service gifts and monetary gifts are not. But the canon does more than just rule out totally different meanings like fingernails from clasping devices; it most commonly limits "a general term to a subset of all the things or actions that it covers." <u>Id.</u>

¶38 The statute here lists words that refer to money: "payment, loan, pledge, gift, advance of money, or guarantee of a loan." § 1-45-103(6)(c)(I). While "loan" could be used slightly more broadly to refer to property, it could not in any usual or ordinary way refer to services. And although "pledge" in the sense of being "a promise," <u>pledge</u>, <u>Webster's New College Dictionary</u> (2005), could refer to a pledge of service, it, like "gift," takes the common monetary meaning from the surrounding words. Therefore, the word "gift" in this list is best read to mean a monetary gift.

¶39 Second, the definitional scheme suggests that "gift" in subsection (6)(c)(I) should be construed narrowly; were we to construe "gift" in subsection (6)(c)(I) broadly enough to cover non-monetary gifts, we would render subsection (6)(c)(III) superfluous. Subsection (6)(c)(III) counts as a contribution the "fair market value of any gift or loan of property." If subsection (6)(c)(I) included the value of non-monetary gifts, then it would swallow subsection (6)(c)(III). Because that construction would leave subsection (6)(c)(III) meaningless, we avoid it. <u>See</u> <u>Lente</u>, ¶ 21, 406 P.3d at 833 ("Were we to construe one term to swallow the other, or to be its equal, then the other term would be superfluous. We avoid such constructions.").

¶40 Therefore, we conclude section 1-45-103(6)(c)(I) does not include a gift of service.

16

## III. Conclusion

¶41    We hold that the uncompensated legal services at issue here are not "contributions" to a political organization under Colorado's campaign-finance laws. Accordingly, the court of appeals erred in holding that Better Future was required to report Anderson's donated legal services. We reverse and remand for further proceedings consistent with this opinion.