Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 7**

**No. 17SC149, <u>Campaign Integrity Watchdog v. Alliance for a Safe and Independent Woodmen Hills</u>—Election Law—Constitutional Law—Political Speech**

The supreme court holds that a political committee must report payments to a law firm for its legal defense as contributions, but not as expenditures.  "[E]xpenditures . . . and obligations" under section 1-45-108(1)(a)(I), C.R.S. (2017), are limited to payments and obligations for expressly advocating the election or defeat of a candidate; payments for legal defense are not for express electoral advocacy.  But payments to a third-party law firm for a political committee's legal defense count as reportable contributions because they are payments "made to a third party for the benefit of any . . . political committee," Colo. Const. art. XXVIII, § 2(5)(a)(II).

The court reverses the Administrative Law Judge's determination that the contribution-reporting requirement is unconstitutional as applied to Alliance.  Under <u>Buckley v. Valeo</u>, 424 U.S. 1, 61–68 (1976), for political committees like Alliance whose major purpose is influencing elections, the governmental interests in political transparency and preventing corruption justify the First Amendment burdens of reporting and disclosure.  It makes little difference that the payments here were made post-election and for legal defense; elections are cyclical and money is fungible.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 7

### Supreme Court Case No. 17SC149

*C.A.R. 50 Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA280
Office of Administrative Courts Case No. OS 2015-0014
Honorable Robert N. Spencer, Administrative Law Judge

### Petitioner:

Campaign Integrity Watchdog,

v.

### Respondents:

Alliance for a Safe and Independent Woodmen Hills; and Colorado Secretary of State.

### Order Affirmed in Part and Reversed in Part

*en banc*
January 29, 2018

**Authorized Representative of Petitioner:**
Matthew Arnold
  *Denver, Colorado*

**Attorneys for Respondent Alliance for a Safe and Independent Woodmen Hills:**
Hale Westfall, LLP
Ryan R. Call
Allan B. Hale
Richard A. Westfall
Peter J. Krumholz
  *Denver, Colorado*

**Attorneys for Respondent Colorado Secretary of State:**
Cynthia H. Coffman, Attorney General
Matthew D. Grove, Assistant Solicitor General
Grant T. Sullivan, Assistant Solicitor General
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 Alliance for a Safe and Independent Woodmen Hills bought ads and social-media coverage in an election. Campaign Integrity Watchdog filed a complaint with the Colorado Secretary of State against Alliance, alleging that Alliance failed to comply with Colorado's campaign-finance laws requiring political committees to report contributions and expenditures. An Administrative Law Judge, or ALJ, ultimately ordered Alliance to pay fines and register as a political committee.

¶2 Alliance appealed the campaign-finance decision and defended itself in a related defamation suit, racking up hundreds of dollars in court costs and thousands in legal fees. Alliance didn't report those legal expenses. So, Watchdog filed another campaign-finance complaint, asserting that Alliance had received contributions to pay the legal expenses and should have reported both the contributions and the spending.

¶3 The ALJ concluded that the legal expenses were not reportable as expenditures but were reportable as contributions. Nonetheless, it ruled that the contribution-reporting requirement was unconstitutional as applied to Alliance for its post-election legal expenses. Watchdog appealed the ALJ's determinations regarding the reporting requirements, and the court of appeals asked us to take the appeal directly under C.A.R. 50. We accepted jurisdiction, in part because this case is related to another that we decide today: Campaign Integrity Watchdog v. Coloradans for a Better Future, 2018 CO XXX, ___ P.3d ___.

¶4 We affirm the ALJ's decision that the legal expenses were not expenditures but were contributions under Colorado law. First, section 1-45-108(1)(a)(I), C.R.S. (2017), requires political committees to report spending only for express advocacy for the

2

election or defeat of a candidate, and legal expenses do not constitute such express advocacy. Second, because a payment to a third party for a political committee's legal defense is a payment "for the benefit" of the political committee, it counts as a contribution under article XXVIII, § 2(5)(a)(II).

¶5 However, we reverse the ALJ's determination that the reporting requirement is unconstitutional as applied to Alliance for its legal expenses. The Supreme Court of the United States has consistently upheld disclosure and reporting requirements for political committees that exist primarily to influence elections. It makes no difference here that the contributions were not used to directly influence an election—any contribution to a political committee that has the major purpose of influencing an election is deemed to be campaign related and thus justifies the burden of disclosure and reporting.

¶6 Accordingly, we affirm the ALJ's decision in part and reverse in part.

## I. Facts and Procedural History

¶7 Alliance for a Safe and Independent Woodmen Hills ("Alliance") was incorporated in the run-up to a 2014 Woodmen Hills Metropolitan District Board of Directors' election. Alliance raised funds and then sent postcards and established a Facebook page, all undermining one of the board candidates, Ron Pace. Campaign Integrity Watchdog ("Watchdog"), Ron Pace, and another Woodmen Hills resident filed complaints about Alliance with the Colorado Secretary of State (the "Secretary") under article XXVIII, section 9(2)(a) of the Colorado Constitution. Watchdog alleged, among other things, that Alliance should have but failed to (1) register as a political committee

3

and (2) report certain contributions and expenditures. As required, the Secretary referred the complaints to the Office of Administrative Courts, where they were consolidated.

¶8 An Administrative Law Judge ("ALJ") held a hearing and then decided that Alliance had violated the Fair Campaign Practices Act, §§ 1-45-101 to -118, C.R.S. (2017) ("FCPA"), by failing to (1) register as a political committee and (2) file contribution and expenditure reports. The ALJ fined Alliance $9650 and ordered it to register and file the missing reports. Alliance filed a notice of appeal and several motions, but eventually withdrew its appeal.

¶9 Meanwhile, Mr. Pace had also sued Alliance and other defendants for defamation and negligence based on Alliance's campaign efforts. After several months of litigation, the district court granted Alliance's motion to dismiss the suit and awarded Alliance attorney fees. Alliance submitted a bill of fees and costs claiming about $42,000 in attorney fees, supported by a law firm's billing statements showing charges and payments for defending the defamation case. The source of the payments had been redacted from the copies of the statements submitted.

¶10 Next, Watchdog filed the complaint at issue here, arguing Alliance (1) should have but failed to report its legal expenses for appealing the first ALJ decision and for defending the defamation case as contributions, (2) should have but failed to report those same expenses as expenditures or disbursements, and (3) had exceeded the contribution limit for political committees. The complaint was referred to an ALJ, and the Secretary intervened to submit a brief in support of Alliance.

4

¶11    First, the ALJ considered whether Alliance was required to report the legal expenses as a contribution. Watchdog pointed out that the constitution counts as a contribution "[a]ny payment made to a third party for the benefit of any . . . political committee," Colo. Const. art. XXVIII, § 2(5)(a)(II), and it argued that payments to the court and the law firm as part of Alliance's legal defense fit the plain language of the definition. Warning of constitutional problems, Alliance and the Secretary asked the ALJ to construe the provision narrowly to include only payments made for the purpose for which the political committee was formed — influencing elections. They argued that post-election legal expenses do not serve that purpose.

¶12    The ALJ concluded that the provision was not susceptible of Alliance's narrow construction and held that the definition applied to the legal expenses, but it ruled for Alliance all the same. It held that requiring Alliance to report post-election legal expenses as contributions would violate Alliance's First Amendment rights under the United States Constitution. For the same reason, the ALJ concluded that a contribution cap was unconstitutional as applied to Alliance's post-election legal expenses. Therefore, Alliance was not required to report the legal expenses as a contribution.

¶13    Nor, the ALJ held, was Alliance required to report the legal expenses as expenditures. The constitution defines "expenditure" narrowly as spending "for the purpose of expressly advocating the election or defeat of a candidate." Colo. Const. art. XXVIII, § 2(8)(a) (emphasis added). And, as the ALJ noted, express advocacy under section 2(8)(a) has a still narrower meaning: "speech that explicitly advocates for the election or defeat of a candidate through the use of the 'magic words' set out in

5

[Buckley v. Valeo, 424 U.S. 1, 44 n.52 (1976)][1] or substantially similar synonyms." Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 41, 269 P.3d 1248, 1259. The ALJ concluded that Alliance's spending for legal expenses after the election "was clearly not for the purpose of expressly advocating the election or defeat of a candidate."

¶14 Watchdog appealed the ALJ's determinations regarding the reporting requirements,[2] and the court of appeals asked us to accept the case directly under C.A.R. 50. We accepted jurisdiction, in part because this case is related to another case for which we had already granted certiorari, Campaign Integrity Watchdog v. Coloradans for a Better Future, 2018 CO XXX. Both involved the question of whether legal services constitute a "contribution" under Colorado's campaign-finance laws.

## II. Analysis

¶15 We begin with the standard of review and principles of interpretation. Next, we describe Colorado's campaign-finance-law scheme and how a registered political

---

[1] This famous footnote in Buckley provided the following examples of express advocacy that have since been labeled the "magic words": "'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" 424 U.S. at 44 n.52.

[2] Watchdog did not appeal the ALJ's determination that the contribution cap is unconstitutional as applied to Alliance, so we do not consider that issue. Watchdog raises one other issue that we will not consider at length—whether the ALJ erred by failing "to address substantiated allegations of perjury." It is the province of the executive branch, not the judicial branch, to prosecute crimes like perjury. People v. Dist. Court, 632 P.2d 1022, 1024 (Colo. 1981). Assuming, without deciding, that imposing sanctions for courtroom perjury may fall within the court's broad discretion to cite contempt, see People v. Aleem, 149 P.3d 765, 781 (Colo. 2007), we perceive no abuse of discretion here.

committee like Alliance fits into it. We then turn to whether Alliance's legal expenses counted either as expenditures or contributions.

¶16 First, we determine that Alliance was not required to report its legal expenses as spending. Political committees are required to report "expenditures made, and obligations entered into." "Expenditures" means only express advocacy, and "obligations" here means obligations to make expenditures. A payment for legal expenses is not a payment for express advocacy.

¶17 Second, we agree with the ALJ that the payments to courts and attorneys for Alliance's legal defense were payments "to a third party for the benefit of" Alliance and were therefore contributions under Colorado Constitution article XXVIII, § 2(5)(a)(II). We conclude that the text cannot bear the narrower construction urged by Alliance.

¶18 Finally, we conclude that the ALJ erred by determining the reporting requirement is unconstitutional as applied to Alliance for its legal expenses. Any contribution to a political committee like Alliance, whose major purpose is to influence elections, is deemed to be campaign related and thus justifies the burden of reporting and disclosure.

## A. Standard of Review and Principles of Interpretation

¶19 We review questions of constitutional and statutory interpretation de novo. Gessler v. Colo. Common Cause, 2014 CO 44, ¶ 7, 327 P.3d 232, 235.

¶20 In construing statutes and citizen initiatives, we attempt to give effect to the General Assembly's and the electorate's intent, respectively. See Teague v. People, 2017 CO 66, ¶ 8, 395 P.3d 782, 784 (statute); People v. Lente, 2017 CO 74, ¶ 16, 406 P.3d 829,

7

832 (citizen initiative). We read words and phrases in context, § 2-4-101, C.R.S. (2017), according them their plain and ordinary meanings, Teague, ¶ 8, 395 P.3d at 784; Lente, ¶ 16, 829 P.3d at 832. If the language is clear, we apply it as written. Teague, ¶ 8, 395 P.3d at 784; Lente, ¶ 16, 829 P.3d at 832.

## B. Overview of Colorado Campaign-Finance Laws Applicable Here

¶21    Three primary sources provide campaign-finance law in Colorado. Article XXVIII of the Colorado Constitution, a citizen initiative, limits and requires reporting of some political contributions and spending, and it enables private enforcement of campaign-finance law. The FCPA covers more of the same ground. Finally, the Secretary promulgates additional campaign-finance rules. Dep't of State, 8 Colo. Code Regs. 1505-6 (Dec. 15, 2017).

¶22    We will treat Alliance as a "political committee" because that is how it is registered and its status is not at issue in this case. "'Political committee' means any person, other than a natural person . . . that [has] accepted or made contributions or expenditures in excess of $200 to support or oppose the nomination or election of one or more candidates." Colo. Const. art. XXVIII, § 2(12)(a). Alliance and the Secretary point out that there is no evidence that Alliance coordinated with a candidate, and Colorado's campaign-finance laws suggest committees that make only independent expenditures and do not coordinate with a candidate should not be treated as political committees. See § 1-45-103.7(2.5), C.R.S. (2017) ("An independent expenditure committee shall not be treated as a political committee and, therefore, shall not be subject to the requirements of section 3(5) of article XXVIII of the state constitution."); Dep't of State,

8

8 Colo. Code Regs. 1505-6(1.7) (Dec. 15, 2017) ("An Independent expenditure committee differs from a political committee in that an independent expenditure committee may not directly contribute to a candidate committee or political party and may not coordinate its campaign-related expenditures with a candidate, candidate committee, or political party."). But because Alliance was adjudicated to be a political committee in the first campaign-finance proceeding, and because it did not challenge that classification either on appeal in the first proceeding or at any stage of this proceeding, its classification as a political committee is not at issue now. [3]

¶23    Both the state constitution and the FCPA impose requirements on political committees. The constitution limits the amount of contributions a political committee can receive in a house-of-representatives election cycle. Colo. Const. art. XXVIII, § 3(5). The FCPA requires political committees to file reports disclosing expenditures and contributions. § 1-45-108, C.R.S. (2017).

### C. Alliance Was Not Required to Report Spending on Legal Services

¶24    Under the FCPA, "all . . . political committees . . . shall report . . . expenditures made, and obligations entered into by the committee." § 1-45-108(1)(a)(I).

---

[3] In its motion to dismiss the complaint in this proceeding, Alliance included a footnote expressing "reservation" about its classification as a political committee, but went on to describe the issue as "not relevant to this Motion" and "beyond the scope of the present Complaint." Alliance included a similar footnote expressing the same "reservation[]" in its briefing on appeal, but acknowledging that the issue "may be res judicata." The Secretary, likewise, included a footnote noting the issue but acknowledging that it "may be res judicata." Because Alliance effectively abandoned the issue, we need not address whether Alliance would have been precluded from raising it in this proceeding.

¶25 The ALJ correctly determined that Alliance's spending on legal expenses did not qualify as an "expenditure" under campaign-finance law. The meaning of expenditure is limited to spending for "expressly advocating" the election or defeat of a candidate, Colo. Const. art. XXVIII, § 2(8)(a), and express advocacy is limited further still to advocacy by use of Buckley's "magic words" or substantially similar synonyms, Colo. Ethics Watch, ¶ 41, 269 P.3d at 1259; see Buckley, 424 U.S. at 44 n.52. Money spent for legal expenses is not spent for expressly advocating the election or defeat of a candidate and therefore is not an expenditure.

¶26 That's as far as the ALJ went, but Watchdog argues that more analysis is necessary because the FCPA requires reporting of more than just "expenditures." Political committees must report "expenditures made, and obligations entered into by the committee." § 1-45-108(1)(a)(I) (emphasis added). Watchdog argues that the phrase "obligations entered into" extends beyond express advocacy and sweeps in any time a committee agrees to incur debt, such as when Alliance commissioned legal services.

¶27 For two reasons, we conclude that the phrase "obligations entered into" as used in section 1-45-108(1)(a)(I) includes only obligations entered into for making expenditures. First, we avoid absurd interpretations. See Pineda-Liberato v. People, 2017 CO 95, ¶ 22, 403 P.3d 160, 164. And it would be absurd to require reporting of all obligations to spend money regardless of purpose yet to require reporting of money actually spent only for a single narrow purpose—express advocacy. Second, the FCPA ties the meaning of obligation to expenditures when it expressly defines "obligating" to mean an agreement to make, or indirect provision of, an "independent expenditure."

10

See § 1-45-103(12.7), C.R.S. (2017) (defining "obligating"). Although this definition does not necessarily apply to all of a political committee's obligations, some of which might be coordinated with a candidate and therefore not "independent," the definition reinforces our understanding that the legislature intended to treat obligations no more broadly than it did actual spending.

¶28 Watchdog contends that we should defer to a rule promulgated in 2015 by the Secretary that suggests a different result. At the time Watchdog filed the complaint in this case, the Secretary had promulgated a rule interpreting the statutory phrase "expenditures made, and obligations entered into" as meaning "all committee-related disbursements." Dep't of State, 8 Colo. Code Regs. 1505-6(1.6) (Dec. 15, 2015).[4] Under this rule, argues Watchdog, payments for legal services qualify as "expenditures made, and obligations entered into."

¶29 The 2015 rule does not alter our result. To the extent the rule can be read to extend beyond expenditures and obligations for expenditures, such a reading conflicts with the statute's text as we have interpreted it, and it is therefore void. See § 24-4-103(8)(a), C.R.S. (2017) ("Any rule . . . which conflicts with a statute shall be void."); Hanlen v. Gessler, 2014 CO 24, ¶ 35, 333 P.3d 41, 49 ("[T]he Secretary lacks authority to promulgate rules that conflict with statutory provisions.").

---

[4] The rule defining "expenditures made, and obligations entered into" has since been rescinded. Dep't of State, 8 Colo. Code Regs. 1505-6(1) (Dec. 15, 2017) (omitting definition of "expenditures made, and obligations entered into").

¶30     We affirm the ALJ's determination that Alliance was not required to report the legal expenses as an underline expenditure underline or obligation. Next we consider whether the FCPA required Alliance to report them as a underline contribution underline.

### D. Money Paid to Third Parties for Alliance's Legal Defense Was a Contribution Under the FCPA

¶31     In addition to expenditures, the FCPA requires political committees to report "their contributions received." § 1-45-108(1)(a)(I). Under the FCPA, "'[c]ontribution' shall have the same meaning as set forth in section 2(5) of article XXVIII of the state constitution." § 1-45-103(6)(a), C.R.S. (2017). The constitutional definition of "contribution" includes "[a]ny payment made to a third party for the benefit of any . . . political committee." Colo. Const. art. XXVIII, § 2(5)(a)(II).

¶32     The parties dispute whether payments to a law firm to defend Alliance in a tort suit count as a reportable contribution under article XXVIII, section 2(5)(a)(II). Watchdog argues, and the ALJ held, that the payments to the law firm—a third party—for Alliance's legal defense—a benefit—unavoidably fall within section 2(5)(a)(II). The ALJ then went on to hold the provision unconstitutional as applied to Alliance. Alliance and the Secretary contend we should construe the provision narrowly to avoid the constitutional problem. They ask us to look to the purposes of article XXVIII, the campaign-finance amendment, and to construe the provision to mean "any payment made to a third party for the benefit of any . . . political committee" underline for the purpose of influencing an election underline. If we accept that interpretation, they ask us to

go a step further and hold that Alliance's post-election legal expenses were not made for the purpose of influencing an election.

¶33 We agree with the ALJ that the text of section 2(5)(a)(II) cannot bear the narrow purpose limitation Alliance asks us to give it. Although subpart (II) uses words of purpose to limit the payments to third parties that count as contributions, the ones it uses are broad: "<u>for the benefit</u> . . . of any political committee." <u>Id.</u> (emphasis added). And a comparison to neighboring subparts demonstrates that this broad language was deliberate. Subpart (IV) expressly contains the narrow purpose limitation that Alliance would have us read into subpart (II): "Anything of value given, directly or indirectly, to a candidate <u>for the purpose of promoting the candidate's nomination, retention, recall, or election</u>." Colo. Const. art. XXVIII, § 2(5)(a)(IV) (emphasis added). So, where one of the subparts applies only to a narrower set of purposes, it says so. Subpart (II) broadly says that it applies to payments "for the benefit" of political committees, and we must infer from context that it means what it says.

¶34 Applying the plain language of section 2(5)(a)(II) to the record here, we conclude that Alliance's post-election legal expenses were contributions. Because the law firm that defended Alliance and the court of appeals were both third parties in relation to Alliance, the payments of filing fees to the court and of legal fees to the law firm were "payment[s] made to a third party," Colo. Const. art. XXVIII, § 2(5)(a)(II). And the payments were "for the benefit," <u>id.</u>, of Alliance because they furthered Alliance's legal defense.

13

¶35    Because the payments of Alliance's legal expenses were "contribution[s]" to Alliance under section 2(5)(a)(II), Alliance was required to report them as contributions under section 1-45-108(1)(A)(I).

¶36    The ALJ reached this same conclusion, but then proceeded to hold that the reporting requirement was unconstitutional as applied to Alliance's post-election legal expenses.  We turn now to the as-applied constitutional question.

## E.  The Contribution Reporting Requirement Is Not Unconstitutional as Applied to Alliance for Legal Expenses

¶37    Although the ALJ recognized that Buckley upheld reporting and disclosure requirements for political committees, it determined that the governmental interests justifying the constitutional burdens of reporting in Buckley applied with less force to Alliance's post-election legal expenses.  It reasoned that such "contributions" were too far removed from electoral advocacy to be of legitimate interest to the government or the electorate.  It therefore held the reporting requirements unconstitutional as applied to Alliance.

¶38    Requiring reporting and disclosure for campaign activities burdens the First Amendment freedom of association and, to a lesser degree, the freedom of speech.  See Buckley, 424 U.S. at 64; Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 366–67 (2010).  The burden on speech is limited because reporting and disclosure requirements "impose no ceiling on campaign-related activities," Citizens United, 558 U.S. at 366 (quoting Buckley, 424 U.S. at 64), and "do not prevent anyone from

14

speaking," id. (quoting McConnell v. Fed. Election Comm'n, 540 U.S. 93, 201 (2003), overruled on other grounds by Citizens United).

¶39 Because they burden these constitutional freedoms, campaign-finance reporting and disclosure requirements must survive "exacting scrutiny." Buckley, 424 U.S. at 64. That standard "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Citizens United, 558 U.S. at 366–67 (quoting Buckley, 424 U.S. at 64, 66).

¶40 Applying such scrutiny, the Court in Buckley upheld reporting and disclosure requirements for political committees very similar to those at issue here. See Buckley, 424 U.S. at 61–68. The Court recognized that disclosure and reporting requirements might deter some people from contributing and might expose contributors to harassment or retaliation, id. at 68, but it decided those burdens were justified by three governmental interests, id. at 66–68. First, disclosure provides valuable information by showing the electorate where political money comes from and how it is spent. Id. at 66–67. "The sources of a candidate's financial support also alert the voter to the interests to which a candidate is most likely to be responsive and thus facilitate predictions of future performance in office." Id. at 67. Second, disclosure prevents corruption and the appearance of corruption by exposing to light those who would attempt to purchase legislative favors. Id. Third, reporting requirements help gather the data necessary to detect violations of contribution caps. Id. at 67–68. As for the relation between these governmental interests and the reporting requirements, the Court explained that disclosure and reporting requirements are the "least restrictive

15

means of curbing the evils of campaign ignorance and corruption that Congress found to exist." Id. at 68.

¶41 The same rationale carried the day more than thirty years later in Citizens United, when the Court once again upheld disclosure and reporting requirements for independent electioneering groups. 558 U.S. at 367–70. The Court went so far as to say that the informational interest alone justified the requirement that independent groups disclose their electioneering activities. Id. at 369.[5]

¶42 The ALJ decided that the contribution here—payment for post-election legal expenses—was too far removed from campaign spending to be controlled by Buckley and Citizens United. It reasoned that none of Buckley's three governmental interests applied to "contributions that are not intended to influence an election."

¶43 But, as Buckley explained, the activities of a political committee whose major purpose is to influence elections "are, by definition, campaign related." 424 U.S. at 79. The ALJ found that Alliance was formed for the purpose of influencing the outcome of the Woodmen Hills election, and Alliance does not dispute that characterization. Under Buckley's logic, then, because Alliance's major purpose is to influence an election,[6] any contribution to Alliance is campaign related.

---

[5] The Citizens United Court left room for an as-applied challenge based on a showing that there is a "reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." 558 U.S. at 370. But Alliance has made no such showing here.

[6] The ALJ concluded that Buckley's "by definition" rationale couldn't apply to Alliance because Colorado law defines "political committee" more broadly than the "major purpose" definition at issue in Buckley. But Alliance fits Buckley's major-purpose

16

¶44    It makes little difference that the contribution at issue here (1) occurred post-election and (2) did not directly serve to influence a campaign.  As Watchdog points out, elections are cyclical and money is fungible.  Although one election may have passed, more will come.  Cf. id. at 67 ("This exposure [by required disclosure] may discourage those who would use money for improper purposes either before or after the election." (emphasis added)).  Further, the interests identified in Buckley apply to any contribution to a group that primarily serves to influence elections, even a contribution earmarked for non-campaign purposes like legal expenses.  The electorate benefits from knowing "the interests to which a candidate is most likely to be responsive," id., and one could reasonably infer that the candidate Alliance supported would be responsive to the contributor that defended Alliance to the tune of $42,000.  Further, disclosure of the contribution might deter the candidate from being overly responsive to the contributor, and would help the electorate detect any such corruption that occurred.  See id.

¶45    We conclude that the reporting requirements of section 1-45-108(1)(a)(I) are not unconstitutional as applied to Alliance.

### III.  Conclusion

¶46    We affirm the ALJ's determinations that Alliance's post-election legal expenses (1) were not reportable expenditures but (2) did qualify as "contribution[s]" under

definition, and that is enough here.  Whether the Colorado definition extends to other organizations that don't have the major purpose of influencing elections might matter in a facial challenge but is irrelevant as applied here to Alliance.

article XXVIII, section 2(5)(a)(II) of the Colorado Constitution. We reverse the ALJ's determination that the FCPA's reporting requirements are unconstitutional as applied to Alliance for its "contribution" of payments for post-election legal expenses. We remand for further proceedings consistent with this opinion.