Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 29**

**No. 16SC639, <u>TABOR Foundation v. Regional Transportation District</u>—Taxpayer Bill of Rights—Incidental and De Minimis Tax Revenue Increases.**

To simplify tax collection and ease administrative burdens, House Bill 13-1272 realigned the sales taxes for the Regional Transportation District and the Scientific and Cultural Facilities District with the State's sales tax. This involved removing some sales tax exemptions and adding others, resulting in a projected 0.6% net revenue increase for the Districts. The TABOR Foundation sued, arguing that H.B. 13-1272 violated the Taxpayer Bill of Rights, Colo. Const. art. X, § 20(4) ("TABOR"), by making this tax change without first obtaining voter approval.

The supreme court holds that legislation like H.B. 13-1272 that causes only an incidental and de minimis tax-revenue increase does not amount to a "new tax" or a "tax policy change" under TABOR section 4. Because the court of appeals correctly determined that H.B. 13-1272 is constitutional, the supreme court affirms its judgment.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 29

### Supreme Court Case No. 16SC639
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA582

### Petitioners:

TABOR Foundation, a Colorado non-profit corporation; and Penn Pfiffner,

v.

### Respondents:

Regional Transportation District; Lorraine Anderson, Kate Williams, Bonnie Archuleta, Paul Daniel Solano, Barbara Deadwyler, Claudia Folska, Larry Hoy, Bob Broom, Ken Mihalik, Judy Lubow, Natalie Menten, Doug Tisdale, Charles Sisk, Tina Francone, and Jeff Walker, Directors of the Regional Transportation District; Scientific and Cultural Facilities District; Kathy Imel, Damon Barry, Deborah Malden, Dan Hopkins, Rob Johnson, Kendra Black, Peggy Lehmann, Harold Logan Jr., Ann Speer, Lynn Jeffers, and Elaine Torres, Directors of the Scientific and Cultural Facilities District; Colorado Department of Revenue; and Barbara Brohl, Executive Director of the Colorado Department of Revenue.

### Judgment Affirmed
*en banc*
April 23, 2018

**Attorneys for Petitioners:**
Mountain States Legal Foundation
Steven J. Lechner
  *Lakewood, Colorado*

**Attorney for Respondents Regional Transportation District and Directors of the Regional Transportation District:**
Rolf G. Asphaug
  *Denver, Colorado*

**Attorneys for Respondents Scientific and Cultural Facilities District and Directors of the Scientific and Cultural Facilities District:**
Norton & Smith, P.C.
Charles E. Norton
  *Denver, Colorado*

Icenogle Seaver Pogue P.C.
Alan D. Pogue
  *Denver, Colorado*

**Attorneys for Respondents Colorado Department of Revenue and Barbara Brohl:**
Cynthia H. Coffman, Attorney General
Frederick R. Yarger, Solicitor General
Claudia Brett Goldin, First Assistant Attorney General
Robert H. Dodd, Jr., Assistant Solicitor General
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Municipal League:**
Butler Snow LLP
Martina Hinojosa
Dee P. Wisor
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     The Regional Transportation District and the Scientific and Cultural Facilities District are funded by a broad sales tax with a few exemptions. Originally, the two Districts' sales taxes covered the same items as the State of Colorado's general sales tax. But over the years, lawmakers added and removed exemptions, sometimes for the State and sometimes for the Districts. As the exemptions for the State and the Districts gradually diverged, tax collection became increasingly complicated for both vendors and the revenue department. To make it easier for everyone, the General Assembly passed House Bill 13-1272, adding and removing exemptions on the Districts' taxes to realign them with the State's. This yielded a projected net increase in the Districts' annual tax revenue of 0.6%. And it is with this projected increase in tax revenue that this otherwise mundane plot thickens.

¶2     When the Districts began collecting the altered sales tax without holding a vote, the TABOR Foundation sued. It argued that the Bill created a "new tax" or effected a "tax policy change" and therefore required voter approval under Colorado's Taxpayer Bill of Rights, Colo. Const. art. X, § 20(4)(a). The trial court granted the Districts summary judgment on stipulated facts, and a division of the court of appeals affirmed.

¶3     We clarify that legislation causing only an incidental and de minimis tax-revenue increase does not amount to a "new tax" or a "tax policy change." H.B. 13-1272 is such a bill: It serves to simplify tax collection and ease administrative burdens, and it only incidentally increases the Districts' tax revenues by a de minimis amount. Accordingly, we conclude that H.B. 13-1272 does not violate the constitution, and we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶4 House Bill 13-1272 (the "Bill") adjusted sales tax exemptions for the Regional Transportation District and the Scientific and Cultural Facilities District ("RTD" and "SCFD," respectively, or the "Districts," collectively). The Bill's "intended purpose" was to "simplify the administration and collection of sales and use tax" for the Districts. Ch. 337, sec. 1, 2013 Colo. Sess. Laws 1964, 1964. The legislative declaration recognized that the Districts generally shared a sales- and use-tax base with the State: tangible personal property. Yet certain types of property were exempt from taxation by the Districts but not by the State, and vice versa. The declaration explained that applying these few disparate exemptions to an otherwise common tax base "leads to confusion for taxpayers and . . . is an administrative burden for vendors who collect and remit the tax to the state." Id.

¶5 To accomplish this simplification and administrative reduction, the Bill removed and added sales- and use-tax exemptions for the Districts to realign the Districts' tax base with the State's. The Bill removed exemptions from the Districts' taxes for sales and use of cigarettes, direct-mail advertising materials, candy, soft drinks, and nonessential food containers. It added exemptions from the Districts' taxes for sales and use of low-emitting motor vehicles, power sources and their parts, machinery, and machine tools. Just for the SCFD, the Bill added an exemption for vending-machine sales of food.

¶6 The Staff Fiscal Note for the Bill projected that the exemption changes would result in a 0.6% net revenue increase for the Districts.

4

¶7    Once the Bill took effect, the Districts began collecting the taxes based on the new exemptions, and did so without seeking voter approval for the tax change.

¶8    The TABOR Foundation (the "Foundation") sued the Districts, claiming that the Bill violated the Taxpayer Bill of Rights ("TABOR"), Colo. Const. art. X, § 20. Section 4 of TABOR requires, as relevant here, that districts "have voter approval in advance for . . . any new tax . . . or a tax policy change directly causing a net tax revenue gain to any district." The Foundation noted that the Bill was projected to increase revenue, and it argued that the removal of exemptions—which allowed the Districts to begin taxing items they couldn't before—amounted to a "new tax" or a "tax policy change."

¶9    The parties stipulated to a set of facts, and the trial court granted the Districts summary judgment. It reasoned that the Bill was not a "new tax" because it was merely an administrative adjustment to an existing tax. Nor did the Bill effect a "tax policy change," said the court, because the dictionary defined "policy" as a "high level overall plan," and the Bill did not alter a high-level overall plan.

¶10   A division of the court of appeals affirmed on similar grounds. It bolstered its opinion with the additional conclusion that the voters had already approved a sales tax on all items when they approved initially funding the Districts.

¶11   The Foundation petitioned this court for review, and we granted certiorari.[1]

---

[1] We granted certiorari on the following questions:

  1. Whether H.B. 13-1272, which permits the Regional Transportation District and the Scientific and Cultural Facilities District to levy sales taxes on items previously exempt from sales taxes, requires voter

## II. Analysis

¶12    H.B. 13-1272 removed some sales-tax exemptions for the Districts resulting in a projected net revenue increase. The Foundation argues the Bill[2] violates TABOR because it amounts to a "new tax" or a "tax policy change directly causing a net tax revenue gain" that lacks voter approval. The Districts respond that the Bill is neither a new tax nor a tax policy change because it is merely administrative, adding some exemptions while removing others and resulting in only a marginal revenue increase.

¶13    We start by setting out the standard of review, the framework for analyzing constitutional challenges, and the principles for interpreting statutes and constitutions. We then examine the provisions of TABOR at issue. Next, we ask whether the Bill either creates a "new tax" or effects a "tax policy change" under section 4 of TABOR. We conclude that it does neither. Under the constitutional text and our precedent, "new tax" and "tax policy change" are best read to exclude legislation that causes only an incidental and de minimis tax revenue increase. We determine that the Bill, viewed (as it must be) in light of the Districts' annual tax revenues and budgets, causes only an

---

approval under the Taxpayer's Bill of Rights (TABOR), Colo. Const. art. X, § 20(4)(a).

2. Whether a taxpayer must prove "beyond a reasonable doubt" that a district's levying of taxes without voter approval violates the Taxpayer's Bill of Rights (TABOR), Colo. Const. art. X, § 20(4)(a).

[2] In an effort to persuade us not to apply the stringent beyond-a-reasonable-doubt standard of constitutional challenges to statutes, the Foundation framed its argument on appeal as a challenge not to the Bill itself, but to the Districts' collection of the tax. Because we don't resolve the case on the beyond-a-reasonable-doubt standard, the distinction is irrelevant.

incidental and de minimis revenue increase.[3]  Therefore, we conclude that H.B. 13-1272 does not violate TABOR.

## A.  Standard of Review, Analytical Framework, and Principles of Interpretation

¶14  We review summary judgments and interpret statutes and constitutions de novo. Burton v. Colo. Access, 2018 CO 11, ¶ 19, ___ P.3d ___ (summary judgment); Campaign Integrity Watchdog v. All. for a Safe & Indep. Woodmen Hills, 2018 CO 7, ¶ 19, 409 P.3d 357, 361 (constitutional and statutory interpretation).  When the parties do not dispute the material facts, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law.  Ryan Ranch Cmty. Assoc., Inc. v. Kelley, 2016 CO 65, ¶ 23, 380 P.3d 137, 142.

¶15  We presume a statute is constitutional, and we have long required parties challenging the constitutionality of statutes to prove unconstitutionality beyond a reasonable doubt.  See Dean v. People, 2016 CO 14, ¶ 8, 366 P.3d 593, 596; Alexander v. People, 2 P. 894, 896 (Colo. 1884).  The Foundation asks us to reconsider the beyond-a-reasonable-doubt standard for constitutional challenges, or at least for challenges to statutes under TABOR.  See United Air Lines, Inc. v. City & Cty. of

_____

[3] In addition, at least some of the tax changes here were already approved by voters. Voters approved initially funding each of the Districts (RTD in 1973 and SCFD in 1988) with a broadly worded and unqualified sales tax.  The parties dispute whether these ballot initiatives can be read to extend to items that were not taxable at the time they were approved but became taxable years later.  But even if we assume that voters approved a sales tax on only the items that were taxable by the State at the time, that would still mean voters approved a tax for RTD on sales of candy, soft drinks, and food containers: three of the five categories of items contributing to the 0.6% revenue increase for RTD.

7

Denver, 973 P.2d 647, 655–59 (Colo. App. 1998) (Briggs, J., specially concurring) (questioning the wisdom of maintaining the beyond-a-reasonable-doubt standard for constitutional challenges). It urges us to adopt a less onerous "plain showing" standard instead. See United States v. Morrison, 529 U.S. 598, 607 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." (emphasis added)). But because we conclude the Foundation has failed to prove H.B. 13-1272 unconstitutional under either standard, we decline to reconsider our choice of standards today.

¶16 "In construing statutes and citizen initiatives, we attempt to give effect to the General Assembly's and the electorate's intent, respectively." Campaign Integrity Watchdog, ¶ 20, 409 P.3d at 361. We read words and phrases in context and accord them their plain meanings. Id. "If the language is clear, we apply it as written." Id.

## B. TABOR

¶17 Because the Foundation challenges the Bill under TABOR, we begin by reviewing what TABOR requires.

¶18 Colorado citizens enacted TABOR, Colo. Const. art. X, § 20, by initiative in 1992. TABOR restricts districts' power to tax and spend, and it defines a district as "the state or any local government." Colo. Const. art. X, § 20(1), (2)(b). With some exceptions inapplicable here, TABOR provides that "districts must have voter approval in advance for . . . any new tax, tax rate increase, mill levy above that for the prior year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a

8

tax policy change directly causing a net tax revenue gain to any district." Colo. Const. art. X, § 20(4)(a) (emphases added).

¶19 So, did the Bill create a "new tax" or effect a "tax policy change directly causing a net tax revenue gain" without voter approval in advance? The answer turns on what TABOR means by "new tax" and "tax policy change." We consider that now.

## C. What Is (or Isn't) a New Tax or a Tax Policy Change?

¶20 Not surprisingly, the parties disagree about what constitutes a "new tax" or a "tax policy change." The Foundation says any change to taxes that increases tax revenue is both. The Districts read the phrases much more narrowly. They concede that the implementation of a new type of tax would be a "new tax," and that a change in the high-level overall plan of taxation would amount to a "tax policy change," but they argue that anything short of those major changes fails to implicate TABOR.

¶21 This court has never decided what constitutes a "new tax" or a "tax policy change" under TABOR section 4(a), but it has provided some limited guidance on what does not: laws that cause only de minimis and incidental revenue increases. In Mesa County Board of County Commissioners v. State, 203 P.3d 519, 529 (Colo. 2009), we observed,

> [T]o understand the language "tax policy change" in any real sense, it cannot be applied to any policy modifications that may have a de minimis impact on a district's revenues. To apply the limit in such a broad manner would make any legislative action in the revenue arena nearly impossible and cripple the government's ability to function.

However, Mesa County is of limited value for interpreting "tax policy change" because there we did not seriously question whether the tax increase at issue constituted a tax

9

policy change. See id. Barber v. Ritter also touched on the meanings of "tax policy change" and "new tax" by considering the difference between a fee and a tax. 196 P.3d 238, 248–49 (Colo. 2008) ("[I]f the language states that a primary purpose for the charge is to raise revenues for general governmental spending, then it is a tax."). Barber lends some support to Mesa County's notion that laws do not trigger TABOR's voting requirements merely by causing minimal and incidental revenue gains. See id. at 250 ("[I]ncidental defraying of general governmental expense does not transform a fee into a tax."). But as the court of appeals recognized, Barber, too, is of limited use here, because it concerned the difference between a fee and a tax, while this case undoubtedly concerns a tax.

¶22    While not directly on point, Mesa County and Barber weigh against the Foundation's position that any bill removing a tax exemption and causing an increase in tax revenue—even an incidental and de minimis increase—is a "new tax" or a "tax policy change" requiring voter approval. Imagine a bill like the one at issue here that added and removed tax exemptions to simplify tax collection and reduce the administrative burden on vendors, but that resulted in a net revenue increase for the district of only five dollars per year. The Foundation's approach would have the ironic effect of requiring more government overhead (in the form of securing voter approval) before the legislature could take that five-dollar step to simplify government. We reject such an approach: "We have consistently declined to adopt interpretations of article X, section 20 that would unreasonably curtail the everyday functions of government." Mesa Cty., 203 P.3d at 529.

¶23 And interpreting "new tax" and "tax policy change" to exclude legislation that causes only an incidental and de minimis tax-revenue increase squares with TABOR's text. This holds true when we consider the phrases both (1) alone and (2) in context.

¶24 First, we strive to give effect to every word of a constitutional provision, Havens v. Bd. of Cty. Comm'rs, 924 P.2d 517, 523 (Colo. 1996), and each of these phrases includes a word that implies more than mere change. The word "new" in "new tax" suggests creation, not alteration. See New, Webster's New College Dictionary (2005) (defining as "never existing before; appearing, thought of, developed, made, produced, etc. for the first time"). And "tax policy change" contains "policy," which, in this context, suggests a significant change: It means "a principle, plan, or course of action." Policy, Webster's New College Dictionary (2005). Moreover, construing "tax policy change" to encompass any tax change would render the word "policy" superfluous. We avoid such constructions. See In re Great Outdoors Colo. Tr. Fund, 913 P.2d 533, 542 (Colo. 1996) ("Courts must lean in favor of a construction that will render every word operative, rather than one that may make some words idle and nugatory.").

¶25 Second, legislation causing only an incidental and de minimis revenue increase does not implicate the broader provision's central concern: constraining tax hikes. Although section 4 doesn't expressly state that its central concern is constraining tax hikes, we can discern as much by reviewing the list of governmental actions that section 4 seeks to constrain. When words are grouped in a list, we attempt to give them related meaning. See Coloradans for a Better Future v. Campaign Integrity Watchdog, 2018 CO 6, ¶ 37, 409 P.3d 350, 356 (describing and applying the associated-words canon, or

11

"noscitur a sociis"). The two phrases at issue—"new tax" and "tax policy change directly causing a net tax revenue gain"—appear in a list of other governmental actions that all function primarily to raise tax revenue: raising a tax rate, raising a mill levy, raising the value-for-assessment property-tax ratio, and extending an expiring tax. Legislation with only an incidental and de minimis revenue increase doesn't function primarily to raise revenue, and therefore doesn't fit the list.

¶26 So, we've identified something that is <u>not</u> a "new tax" or a "tax policy change": a legislative change causing only an incidental and de minimis revenue increase. If that is enough to resolve this case, then we should resolve it so, without deciding more than is necessary about the meaning of these constitutional terms. <u>See</u> <u>City of Florence v. Pepper</u>, 145 P.3d 654, 660 (Colo. 2006) (avoiding a constitutional analysis in favor of a non-constitutional resolution). Instead of further exploring the meanings of "new tax" and "tax policy change" at this stage, then, we must consider the Districts' argument that the tax change here caused only an incidental and de minimis revenue increase.

## D. H.B. 13-1272 Is Neither a "New Tax" Nor a "Tax Policy Change" Because It Causes Only an Incidental and De Minimis Revenue Increase

¶27 The Bill was projected to increase the Districts' annual tax revenues by 0.6%, which would amount to about $2.7 million for RTD and about $250 thousand for SCFD. The Foundation says that any tax bump just shy of $3 million can't be de minimis. The Districts counter that the projected revenue increase from the Bill is incidental to the Bill's aims and de minimis relative to the Districts' total annual tax revenues (about

12

$515 million combined) and budgets (about $2.835 billion combined). We agree with the Districts.

¶28  First, we recognize that the projected revenue increase is incidental to the Bill's purpose, both as expressed and as effected. The Bill states its purpose to simplify collection and administration of taxes for the Districts to relieve taxpayers' confusion and vendors' administrative burden from having to comply with slightly disparate sales-tax bases. The Bill's function comports with that purpose: While the Bill starts taxing some items, it stops taxing others, thus suggesting that increasing revenue is only an incidental effect.

¶29  Second, practicality requires that we consider a bill's tax change in light of the affected district's broader revenue scheme and budget. Although TABOR restrains government, reasonableness tempers TABOR's grip. See Colo. Const. art. X, § 20(1), ("Its preferred interpretation shall reasonably restrain most the growth of government." (emphasis added)). In accordance with this language, we have consistently viewed TABOR through a lens of practicality and workability. See, e.g., Mesa Cty., 203 P.3d at 529 ("[W]e aim to construe it in a way that provides some workable parameters."). Rather than narrowly focusing on the total amount of a revenue change, we must consider the increase as a percentage of a district's overall tax revenue and budget.

¶30  When we look this way at the projected revenue increase from the Bill, we see a de minimis revenue increase. The Bill was projected to increase SCFD's tax revenue by less than one percent, which also amounts to less than one percent of SCFD's budget. With RTD, the drop falls into an even bigger bucket. The 0.6% tax-revenue increase

13

comes to about one thousandth of RTD's annual budget. Viewed in context, the Bill's revenue increase is de minimis.

¶31 Because the Bill's projected revenue increase is incidental and de minimis, the Foundation has not convinced us—either beyond a reasonable doubt or otherwise—that the Bill created a "new tax" or effected a "tax policy change."[4]

## III. Conclusion

¶32 Legislation that causes only an incidental and de minimis tax-revenue increase does not amount to a "new tax" or a "tax policy change." H.B. 13-1272 is such a bill: It serves to simplify tax collection and ease administrative burdens and increases the Districts' tax revenues by only a de minimis amount. Accordingly, we conclude that H.B. 13-1272 does not violate TABOR, and we affirm the judgment of the court of appeals.

---

[4] Both components—incidental and de minimis—are key to our holding today. We do not suggest that TABOR allows districts to seek to raise revenue by increasing taxes without voter approval so long as they do it in small enough increments; while such measures might be de minimis, they would not be incidental.