22CA2108 Peo in Interest of JPD 10-31-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2108
Elbert County District Court No. 21JD2
Honorable Gary M. Kramer, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.P.D.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE YUN
Graham* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

---

Philip J. Weiser, Attorney General, Abigail M. Armstrong, Assistant Attorney General Fellow, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     J.P.D., a juvenile, appeals the judgment adjudicating him delinquent based on a finding that he committed acts that, if committed by an adult, would constitute sexual assault. He contends that the trial court reversibly erred by (1) admitting a sexual assault nurse examiner's testimony and written report regarding the victim's statements to her about the incident and (2) allowing the nurse to show the jury a medical device that she used during the victim's examination as a demonstrative aid. We disagree and therefore affirm the judgment.

## I.     Background

¶ 2     J.P.D., who was then fourteen years old, is the half brother of the victim's boyfriend. The victim and her boyfriend, who were both eighteen, lived together. On the day in question, the boyfriend's grandfather had died, and the boyfriend, J.P.D., their aunt and uncle, and the victim all gathered at the aunt and uncle's house to drink alcohol and play games. The victim became very intoxicated.

¶ 3     According to the victim, she wanted to lie down on the couch on the home's first floor, but J.P.D. directed her to a mattress in the basement. The victim got into the bed while still clothed, which included a pair of tight skinny jeans. J.P.D. went back upstairs but

1

returned to check on the victim multiple times. Eventually, the victim fell asleep. The victim woke up at some point and felt a person lying next to her. When she called her boyfriend's name, someone responded, "[Y]es," but the victim did not recognize the voice as belonging to her boyfriend. The victim passed out again.

¶ 4 When the victim woke a second time, her jeans and underwear were around her thighs, and she felt pain in her vagina and anus. While walking up the stairs to the first floor, the victim felt blood leaking from her anus. The victim found her boyfriend passed out on the bathroom floor, and she woke him and told him that she believed J.P.D. had raped her. The boyfriend fell back asleep, and the victim then sat down next to the boyfriend and fell asleep as well.

¶ 5 When they next woke up, the victim again told the boyfriend that she believed J.P.D. had raped her, and they both returned to their home. Later that day, the victim went to the hospital "[b]ecause [she] felt like [she] was raped." A sexual assault nurse examiner (SANE) conducted an examination, during which the victim recounted what had occurred the previous night. Evidence collected during the examination was forwarded to the police, but

the victim did not want to speak with law enforcement about the matter at that time.

¶ 6    A month later, an investigator reached out to the victim, and she agreed to speak with him about the incident.  The investigator interviewed J.P.D., who said that he "vividly" remembered the night in question and denied engaging in any sexual contact with the victim.  When asked if his DNA would be found on the victim, J.P.D. said it "probably wouldn't be there."  After the interview ended, J.P.D. called the investigator and requested a second interview, during which he said that his recollection of the evening was "vague" but that he had consensual sex with the victim.

¶ 7    The People filed a petition in delinquency, alleging that J.P.D. had committed the offense of sexual assault (helpless victim).  At trial, the prosecution presented the victim's recitation of the incident and other evidence to support her testimony that she did not consent to sex with J.P.D.  J.P.D.'s theory of defense was that he had consensual sex with the victim and that his initial denial of the encounter and the victim's allegations stemmed from a shared concern that the then-eighteen-year-old victim would face criminal charges for having sex with the then-fourteen-year-old J.P.D.

¶ 8     As relevant here, the prosecution called the SANE, who was qualified as an expert in the field of forensic nurse examinations. The trial court admitted, over J.P.D.'s objection, the SANE's testimony and written report, detailing the victim's recitation to her of the incident, under the medical diagnosis or treatment exception to the hearsay rule.  The court also permitted, over J.P.D.'s objection, the SANE to show the jury a medical device that she used during the victim's examination as a demonstrative aid.  Following a four-day trial, the jury found J.P.D. guilty as charged.

¶ 9     J.P.D. now appeals, contending that the trial court reversibly erred by admitting certain evidence.

## II.     Standards of Review and Reversal

¶ 10     We review a trial court's rulings to admit evidence under an exception to the hearsay rule and to allow a party to use a demonstrative aid for an abuse of discretion.  *People v. Johnson*, 2019 COA 159, ¶ 86, *aff'd*, 2021 CO 35; *see also People v. Palacios*, 2018 COA 6M, ¶ 18.  Under the abuse of discretion standard, we will "uphold the trial court's ruling unless it is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous

understanding or application of the law." *People v. Sandoval*, 2018 COA 156, ¶ 26.

¶ 11     We are not persuaded by J.P.D.'s assertion that his evidentiary challenges are of constitutional dimension. Thus, where a defendant objects to the admission of evidence, we review any error in the admission of such evidence for nonconstitutional harmless error. *Pernell v. People*, 2018 CO 13, ¶ 22. "Under the nonconstitutional harmless error test, the defendant bears the burden of showing prejudice from the error." *People v. Short*, 2018 COA 47, ¶ 54. "[A]n erroneous evidentiary ruling does not require reversal unless the ruling affects the accused's substantial rights," *Nicholls v. People*, 2017 CO 71, ¶ 17, or there is "a reasonable probability that the court's error contributed to [the defendant's] conviction," *Short*, ¶ 54.

### III.     Hearsay

¶ 12     J.P.D. argues that the trial court reversibly erred by allowing the SANE to testify regarding the victim's out-of-court recitation of the incident and by admitting her written report memorializing that recitation. He asserts that this testimony and evidence constituted inadmissible hearsay. We disagree.

5

## A.    Additional Facts

¶ 13    At trial, the SANE testified that every patient who undergoes a SANE examination has three reporting options and that, before the examination began, the victim chose the option under which she would participate in the examination but would not speak with law enforcement at that time.  Under this option, law enforcement would be notified of the examination but would be given no information about the underlying incident.

¶ 14    The SANE said that she obtains from every patient a recitation of the incident that necessitated the examination and that she does this to "help guide [her] . . . treatment of the patient" by providing "a guideline of where [she is] going to look for injury on their bodies."  The prosecutor then moved to admit the SANE's written report of the victim's recitation to her of the underlying incident pursuant to CRE 803(4).

¶ 15    Defense counsel objected, arguing that the victim's recitation of facts relating to the allegedly nonconsensual nature of the sexual encounter was irrelevant to the SANE's treatment.  The trial court found that the prosecution had failed to establish a sufficient foundation to admit the report at that time.

¶ 16 Subsequently, the SANE testified that the report was written by her and that it memorialized the victim's version of the incident verbatim. She reiterated that she collects a history from every patient and that the patient's history guides her medical treatment of the patient.

¶ 17 The prosecutor again moved to admit the written report, and the trial court granted defense counsel's request to conduct a voir dire of the witness. Counsel asked the SANE whether she needed to know about ancillary events surrounding an underlying incident — such as "the movements of the patient prior to the sexual event" — in order to effectively treat the patient. The SANE explained that such information would help "[b]ecause . . . , as a forensic nurse, as a nurse in general, we're treating patients with mind, body, and soul. So [I] do . . . need to know — not just their physical injuries, but what their state of mind is at the time that I'm treating them." When asked about the treatment she could provide for a mental health issue, the SANE responded as follows:

> So when a patient comes in expressing that they've been sexually assaulted, in my experience, that can raise the bar on suicidal ideation. That's something that we check for. Their mental health. This can be devastating

to them and their families, so we want to make sure that they're calm.

Sometimes . . . I had a need to go back to the physician and ask for them to treat [the patient] for anxiety; or if they're too emotional, we're going to take a break and, again, get them something to calm them down, get them something to eat, drink. We do it on their terms, on their time, based on how they are emotionally and physically.

¶ 18    The trial court admitted the SANE's report over defense counsel's objection. And she read into the record her report of the victim's recitation of the incident.

## B.    Governing Law

¶ 19    "Hearsay statements are out-of-court declarations offered into evidence for the truth of the matter asserted." *Blecha v. People*, 962 P.2d 931, 937 (Colo. 1998) (citing CRE 801(c)). A hearsay statement is not admissible unless it falls within an exception to the hearsay rule. CRE 802; *People v. Welsh*, 176 P.3d 781, 790 (Colo. App. 2007). As relevant here, there is an exception for hearsay statements "1) made for purposes of medical diagnosis or treatment; 2) that describe medical history, symptoms, or the inception or cause of symptoms; 3) insofar as they are reasonably pertinent to diagnosis or treatment." *Kelly v. Haralampopoulos*,

2014 CO 46, ¶ 20; *see also* CRE 803(4). Because a declarant obtaining medical services "knows that a false statement may cause misdiagnosis or mistreatment, [the statement] carries special guarantees of credibility." *Kelly*, ¶ 20 (quoting *White v. Illinois*, 502 U.S. 346, 356 (1992)).

¶ 20  A SANE examination serves the dual purpose of an evidence-gathering tool and a "source of comprehensive care for victims." *Teague v. People*, 2017 CO 66, ¶ 12. Relying on the United States Department of Justice report detailing the protocol for conducting SANE examinations, our supreme court noted that "[a] timely, high-quality medical forensic examination can potentially validate and address sexual assault patients' concerns, minimize the trauma they may experience, and promote their healing," and, at the same time, it "can increase the likelihood that evidence collected will aid in criminal case investigation, resulting in perpetrators being held accountable and further sexual violence prevented." *Id.* (citation omitted).

¶ 21  A statement made to a SANE during an examination is admissible if it meets a two-part test: "(1) the statement is reasonably pertinent to treatment or diagnosis; and (2) the content

of the statement is such as is reasonably relied on by a physician in treatment or diagnosis."[1]  *People v. Tyme*, 2013 COA 59, ¶ 16.  But, "[w]here the facts and circumstances surrounding the statements give rise to an inference that the forensic examination . . . had no medical or diagnostic characteristic, but was rather purely investigative, the statements may not be considered trustworthy and thus may not be admissible."  *Id.* at ¶ 17.  In such a scenario, the statements would not have been made for the purpose of promoting diagnosis or treatment.  *Id.*

¶ 22     In *Tyme*, the victim submitted to a SANE examination at the request of law enforcement.  *Id.* at ¶ 2.  At trial, the prosecution sought to introduce the SANE's testimony and report about what the victim told her regarding the sexual assault.  *Id.*  The SANE

---

[1] In *Kelly v. Haralampopoulos*, 2014 CO 46, ¶¶ 40, 43, our supreme court jettisoned the requirement that a physician actually rely on the out-of-court statement for purposes of medical diagnosis under CRE 803(4).  In that case, the court concluded that the patient's girlfriend's statements satisfied Rule 803(4)'s "reasonably pertinent" requirement because the statements regarding the patient's past drug use were *objectively* pertinent to diagnosing his failure to respond to resuscitation efforts.  *Kelly*, ¶ 40.  It thus held that the physician's "actual reliance upon the statements is not required" to show that the statements are "reasonably pertinent to diagnosis." *Id.* at ¶¶ 40, 43.

testified that she obtained this history in order to "guide the assessment that [she was] going to do and to diagnose and treat." *Id.* Defense counsel objected to the testimony based on hearsay, but the trial court overruled the objection because the victim's statements to the nurse were made for purposes of medical diagnosis or treatment. *Id.* On appeal, a division of this court held that the trial court did not err by admitting the SANE's testimony and report under CRE 803(4) because the nurse "testified that she relied on the medical history to guide her examination and used it 'to diagnose and treat,' thereby satisfying the first prong of the reliability test." *Id.* at ¶ 20. The division also noted "that SANEs normally rely on similar histories to 'guide the[ir] diagnosis and treatment,' thereby demonstrating the reasonableness of her reliance on [the victim's] statements in satisfaction of the second prong of the reliability test." *Id.*

### C.   Application

¶ 23    Although the trial court did not make any specific findings, we conclude that the record supports the court's determination that the evidence was admissible under CRE 803(4) because the statements to the SANE were not made for purely investigative

purposes and were "reasonably pertinent to [the] diagnosis or treatment" of mental health issues. *Kelly*, ¶¶ 40, 43; *Tyme*, ¶¶ 17, 20.

¶ 24 Before the examination began and a history was provided, the victim informed the SANE that she did not wish to speak with law enforcement at that time. The victim only reported the assault a month after the examination when police contacted her. Given that the victim declined to report the assault to police at the time of the examination, the facts here do not "give rise to an inference that the forensic examination or interview had no medical or diagnostic characteristic, but was rather purely investigative." *Tyme*, ¶ 17.

¶ 25 Moreover, the SANE testified that she "take[s] a medical history like this for every patient that [she] treat[s]" for an alleged sexual assault and that those statements "guide [her] treatment of [her] patients." During voir dire, she explained specifically how the entirety of the victim's statement informed her medical diagnosis and treatment of the victim. Although J.P.D. argues that the victim's "narrative description of the events prior to her falling asleep" served no medical or diagnostic purpose, this argument overlooks the SANE's testimony that she needed all the information

12

leading up to the assault to diagnose and treat the victim's psychological conditions such as suicidal ideation and anxiety. Under these circumstances, the victim's statements to the SANE were "reasonably pertinent to [the] diagnosis or treatment" of her mental health conditions.

¶ 26 Thus, we conclude that the trial court did not abuse its discretion in admitting the victim's statement to the SANE under CRE 803(4).

## IV. Demonstrative Aid

¶ 27 J.P.D. next argues that the trial court reversibly erred by allowing the SANE to show the jury a medical device that she used during the forensic examination as a demonstrative aid. He asserts that the probative value of this demonstration was substantially outweighed by its undue or unfair prejudicial effect. We conclude that the trial court did not commit reversible error.

## A. Additional Facts

¶ 28 At trial, an expert in forensic DNA analysis and comparison provided a thorough explanation of DNA generally and of the testing conducted in this case. The expert testified that the DNA profile

found on the vaginal and cervical swabs taken from the victim was consistent with J.P.D.'s DNA profile.

¶ 29    The SANE testified about how she collected the DNA samples from the victim's vagina and cervix by using a speculum. She brought a speculum to trial and stated that a demonstration of its use would aid her in explaining how the DNA was collected.

¶ 30    Defense counsel objected, arguing that the demonstration would not aid the SANE's testimony and would instead be used to garner sympathy for the victim by illustrating the invasiveness of the examination. The prosecutor asserted that the demonstration would be helpful to show how the examination was conducted and how a DNA sample from the cervix can be collected independent from a DNA sample from the vagina. Defense counsel maintained that this information was not relevant because J.P.D. was not challenging the fact that he had sex with the victim, the manner in which the DNA was collected, or the appropriateness of the forensic examination.

¶ 31    The prosecutor then asserted that a demonstration of the speculum's use and, relatedly, what a patient has to endure during its use was relevant to rebut the defense's argument that the victim

was not credible by showing that she would not subject herself to such an invasive procedure if an assault had not occurred. Defense counsel noted that the demonstration would not reveal whether the victim personally felt the examination was invasive and would only lead to speculation on that issue.

¶ 32     The trial court overruled the objection, finding that a demonstration of the speculum's use would aid the jury in understanding how the DNA was collected, particularly in light of the DNA expert's earlier extensive testimony about DNA testing. But the court agreed with defense counsel's concern regarding improper speculation as to the victim's personal feelings about the speculum's use during the examination. Thus, the court held that the SANE could demonstrate how the speculum was used but not testify as to the effect its use had on the victim.

¶ 33     The SANE presented a speculum to the jury and demonstrated how it is used to collect a DNA sample from a patient's cervix. The SANE later testified without objection that, after the speculum exam, the victim was upset, which is typical, because "[i]t's pretty invasive."

## B.    Application

¶ 34    A party can use a demonstrative aid to illustrate or clarify a witness's testimony or other admitted evidence to make it more comprehensible to the trier of fact.  *Palacios*, ¶ 19.

> To be used for this purpose, the demonstrative aid must (1) be authentic, meaning the proponent must demonstrate "that the evidence is what it is claimed to be"; (2) be relevant, meaning that it will assist the trier of fact in understanding other testimonial and documentary evidence; (3) be a "fair and accurate representation of the evidence to which it relates"; and (4) not be unduly prejudicial, meaning its probative value must not be substantially outweighed by its danger for unfair prejudice.

*Id.* at ¶ 20 (citations omitted); *see also* CRE 401-403.

¶ 35    Even if the trial court may have abused its discretion in allowing the speculum to be used as a demonstrative aid, reversal is not required if the error was harmless.  *See People v. Summitt*, 132 P.3d 320, 327 (Colo. 2006).  Thus, the harmless error analysis "requires an inquiry into whether, viewing the evidence as a whole, the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings."  *Id.*  "An error in a

16

criminal trial will be disregarded if there is not a reasonable possibility that it contributed to the jury's guilty verdict." *Id.*

¶ 36 Assuming without deciding that the trial court abused its discretion by allowing the SANE to use the speculum as a demonstrative aid, based on a review of the entire record, we conclude that any error in allowing the use of the demonstrative aid was harmless.

¶ 37 The SANE opined, without objection, on the invasiveness of the examination. *See People v. Strickler*, 2022 COA 1, ¶ 34 ("In reviewing for harmless error, we examine a number of factors, including . . . whether the testimony was cumulative . . . ."). In fact, the SANE described how the examination was conducted using a speculum. Seeing the speculum would not have prejudiced J.P.D. any more than hearing about it. And, in its closing argument, the prosecution mentioned the invasiveness of the entire forensic examination but did not specifically reference the speculum demonstration, which constituted a small part of the four-day trial. *See People v. Martinez*, 2020 COA 141, ¶ 43 (The erroneous admission of evidence was harmless because it "constituted a minor portion of [the defendant's] trial," and "the prosecutor did not refer

to or repeat this testimony at any other point of the trial, including during her opening statement and closing argument.").

¶ 38　Still, J.P.D. argues that the demonstrative aid was used only to engender sympathy for the victim because seeing the speculum "conjures the image of a uniquely unpleasant procedure." But the trial court instructed the jurors that they "must not be influenced by sympathy, bias or prejudice in reaching [their] decision." Absent evidence to the contrary, we presume the jury followed this instruction. *See People v. Carter*, 2015 COA 24M-2, ¶ 59.

¶ 39　For all these reasons, we conclude that any error in allowing the demonstrative aid was harmless.

## V.　Disposition

¶ 40　The judgment is affirmed.

JUDGE GRAHAM and JUDGE BERGER concur.